Jacqueline D. PETERSEN, Respondent,

v.

Jerry RUANE, Appellant.

No. 47795.

Supreme Court of Missouri,

Division No. 1.

July 11, 1960.

———◆———

Chapman & Chapman, Thomas W. Chapman, Arthur Litz, St. Louis, for appellant.

Coleman, Gerhard, Padberg, Montrey, Maloney & Cekovsky, Clayton, for respondent.

COIL, Commissioner.

A jury awarded Jacqueline Petersen $10,000 as damages for personal injuries she sustained in an automobile accident. About 2 o'clock in the morning of November 25, 1955, Jacqueline was a rear-seat passenger in an automobile being operated by appellant, defendant below, Jerry Ruane. The automobile left the traveled portion of the street and collided with a utility pole.

In his brief on this appeal, defendant sought a new trial for alleged errors of the trial court in several respects. In oral argument, however, he abandoned all assignments except his contention that the verdict and judgment were grossly excessive and so submitted the case.

Immediately following the impact, plaintiff experienced severe pain in her right leg and her face felt numb and was bleeding. She was conveyed by ambulance to a hospital where she received emergency treatment for her right leg and that same morning was operated for injury to her left eyelids. She left the hospital at noon on the 27th with her right leg and the right side of her face bandaged, and both areas continued to be painful. She was a student at Washington University and lost no time from her classes although it was painful to walk for a time and she was excused from the physical education program. Her leg was bandaged for a period of a month or month and a half during which time she continued to see the ophthalmologist, Dr. Rachlin, who had treated her left eyelids.

On January 17, 1956, Dr. Rachlin removed a cyst from the scar tissue which had formed on the lower left eyelid. By March 1, 1956, her right leg which had continued to bother her tended to "give way" and there were lumps that she could feel in the injured area. Consequently she consulted an orthopedic surgeon who X-

rayed her leg and put it in a toe-to-knee walking cast for a period of ten days. After the cast was removed the lumps were gone but the leg continued to be weak and at trial time was painful and sensitive, particularly in the area just above the ankle joint, and she thought it seemed to have a "thinner covering there and there is still an indentation and still a discoloration in that spot."

At trial time plaintiff was a secretary at an advertising agency and worked part time as a model in a large department store. She said that because of the visible scars as a result of the injury to her left eyelids it was difficult to "put on" the excessive make up necessary for a model and particularly difficult to put on an "eye line" because the scar tissue would tend to shrivel when the "pencil" came in contact and when she tried to wash the "eye line" away, the skin became sore and sensitive.

Dr. Maxwell Rachlin, an ophthalmologist, testified that he examined plaintiff at the hospital on November 26, 1955, and found she had suffered a laceration of her left lower eyelid extending through the full thickness of the lower lid, causing the lid to be "torn away"; a laceration involving the left upper eyelid just below the eyebrow which went through the skin and through the orbicularis muscle (the muscle that helps close the eyelid); and a contusion of the left eyeball (a bruise with no permanent damage resulting). The doctor accomplished a plastic repair of the lacerations by surgery. Healing resulted in the formation of scar tissue which looks different from normal tissue and causes the muscles to lose their elasticity in the area of the scar tissue. Plaintiff's sensory nerves were involved but at trial time the doctor was of the opinion that while the involved area was probably sensitive he thought it was not unduly so. He stated that scar tissue in the area of the injury, including both the upper and lower lids, was a permanent condition but that one had to look closely, i. e., examine within a few inches of the area, to observe that condition; that the scar tissue was not visible from a distance of a few feet although there was an actual thickening of the eyelid which was perceptible to an examining physician. The doctor was of the opinion that he had obtained a good result from every standpoint—a particularly good cosmetic result.

Dr. Carl Fellhauer, an orthopedic surgeon, saw plaintiff March 1, 1956, at which time she complained of pain localized in an area of the right tibia closer to the ankle than to the knee. The doctor took X-rays and examined an X-ray taken at the hospital on the morning of the accident. He found no evidence of fracture or dislocation of the bony structure of the right ankle or lower leg and diagnosed plaintiff's condition as a localized periostitis (inflammation of the bone covering) of the lower tibia. The skin was not broken at that time. He stated that the condition was a painful one and he applied a walking-type cast in order to immobilize the area of inflammation as completely as possible so that "natural body forces" could heal the involved area more rapidly. The cast remained from March 8 to March 17. The doctor last saw the plaintiff on January 2, 1958 (the present trial was March 16–17, 1959) and at that time he said the patient had no residual disability as a result of the accident.

Plaintiff was 21 at trial time, 18 at the time of the accident. The only evidence of special damages was the ophthalmologist's testimony that $300 was a reasonable charge for his services. The record shows that this case was originally filed through a next friend but by trial time plaintiff had reached her majority and prosecuted the suit in her own behalf. There was no evidence as to whether she paid or had become obligated for the $300 medical fee.

While a cosmetic defect may constitute a very serious handicap and under certain circumstances amount to a serious personal injury, the fact is that present plaintiff, through apparently skillful plastic surgery, was left with only a minimal cosmetic de-

fect. That is demonstrated by the fact that at trial time she was employed part time as a model. Plaintiff has difficulty in applying the excessive make up necessary for modeling and there are areas of scar tissue which plaintiff said were sensitive. The doctor agreed that those areas were probably somewhat sensitive. There was no evidence, however, that plaintiff was suffering pain in the region of the left eye at trial time or that she had suffered eye pain for any appreciable length of time following the accident. The subsequent removal of a cyst from the scar tissue area was apparently a rather minor operative procedure.

Plaintiff testified that her right lower leg continued to be painful and sensitive to pressure at trial time but she apparently had not been treated therefor for more than a year and at the time of her last treatment her physician was of the opinion that she had no residual disability as a result of her accident. She did, however, experience pain and discomfort in her right limb for a long period of time following the accident including the discomfort of a walking cast for a period of ten days. She lost no time from her schoolwork and in so far as the record shows, her special damages had not exceeded $300.

Plaintiff has cited cases in support of her contention that the judgment of $10,000 is not excessive and defendant has cited a number of cases to support his contention to the contrary. We have examined those cases and others and find none which furnishes an appropriate yardstick by which we may determine the question of excessiveness in this case. Taking into account, however, the various factors which we normally consider in attempting to resolve the question of the adequacy or excessiveness of the jury award, we are of the opinion that the judgment in this case is excessive in the amount of $4,000. If, therefore, plaintiff will within fifteen days from the date hereof remit the sum of $4,000, a judgment for $6,000 will stand affirmed as of the date of the original judg-

ment. Otherwise, the judgment will be reversed and the case remanded for a new trial.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.