1. Since trial of this cause Ralph L. Martin succeeded William S. Morris as Public Administrator and became "automat-

it rather than following counsel's statement, but we cannot say that the trial court abused its discretion in refusing to award a new trial on account of this statement. We overrule this contention.

The judgment is affirmed.

MORGAN, J., and POWELL, Special Judge, concur.

DONNELLY, J., not sitting.

**Alda Mae HAMILTON, Plaintiff-Appellant,**

v.

**Ronald SLOVER, Defendant-Respondent,**

and

**William S. Morris 1, Public Administrator, Administrator of the Estate of Edwin W. Hamilton, Deceased, Defendant-Appellant.**

**No. 53779.**

Supreme Court of Missouri, Division No. 1.

May 12, 1969.

ically substituted as a party." Civil Rule 52.12(g), V.A.M.R.

948

Roger J. Barbieri and Commodore M. Combs, Jr., Kansas City, for plaintiff-appellant.

Karl F. Schmidt, Robert M. Kroenert, Kansas City, for appellant, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, of counsel.

William J. Marsh, Kansas City, for defendant-respondent, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

HIGGINS, Commissioner.

Personal injury action in which plaintiff had verdict and judgment against defendants for $18,500. Defendant Slover filed posttrial motion for judgment in accordance with his motion for directed verdict at the close of all evidence or, in alternative, for a new trial; defendant administrator filed a similar motion and also a motion for reduction in judgment on account of $500 payment by defendant to plaintiff for medical services pursuant to provisions of liability insurance policy. The court sustained Slover's motion for judgment on ground 1 of his motion, "for the reason that by its verdict, and judgment entered thereon, the jury and the Court found that Edwin W. Hamilton, plaintiff's deceased husband and driver of the motor vehicle in which she was riding, was negligent and under the evidence and the law and the instructions of the Court, could not return a verdict in favor of plaintiff and against defendant Ronald Slover if it found that said Edwin W. Hamilton was negligent and such verdict rendered and judgment entered thereon in favor of plaintiff and against both defendants is therefore self-defeating and conflicting and contrary to law," and, in alternative, awarded Slover a new trial. The court overruled the administrator's motion for judgment or new trial but sustained his motion for reduction of judgment by giving credit for the $500 medical expense payment and entered judgment for plaintiff against the administrator for $18,000. Plaintiff's appeal seeks reinstatement of her judgment against Slover and

of the $500 credit on the judgment against the administrator. Defendant administrator appeals from plaintiff's $18,000 judgment against him.

On Saturday, October 16, 1965, plaintiff Alda Mae Hamilton and her husband, Edwin W. Hamilton, both schoolteachers, drove from their home in Raytown, Missouri, to the farm of her parents, Ester and Ida Farmer, southwest of Pleasant Hill. Mr. Farmer, a retired teacher, had been in ill health since 1950. He could not drive, and Mrs. Farmer did not drive because she had to care for her husband. The Farmers and Hamiltons visited, Mr. Hamilton shaved Mr. Farmer, and the Farmers then rode with the Hamiltons in the Hamiltons' 1965 Volkswagen from the farm to Pleasant Hill where Mrs. Farmer purchased groceries and a blanket. These were the purposes of the Hamiltons in going to Pleasant Hill, a trip they made regularly on weekends. On the return trip to the farm, Mr. Hamilton drove, Mr. Farmer sat beside him in the front seat. Mrs. Hamilton and Mrs. Farmer occupied the rear seat, each sitting behind her husband. In the middle of, and at the crest of a hill on, a county road southwest of Pleasant Hill, the Hamilton Volkswagen, traveling southerly, collided head on with a 1958 Chevrolet driven northerly by defendant Ronald Slover.

The road was dry and had a "travel portion" 18 feet wide consisting of gravel and dirt. Sergeant George Hamilton of the Missouri State Highway Patrol found the Chevrolet in the middle of the road facing north with its front end extensively damaged. There was a distance of nine feet from the deepest penetration of damage on the front of the Chevrolet to the edge of the road. Glass was on the road and the radiator of the Chevrolet was leaking. Seventy-six feet and ten inches of skid marks led in a straight line to the rear from the front wheels of the Chevrolet. The Volkswagen was pushed northerly by the impact with its rear end against a bank at the east side of the road and its front end headed southwesterly. It, too, had extensive front-end

damage and its windshield was atop the hood of the Chevrolet. A distance of 16 feet 6 inches separated the vehicles. A skid mark of 14 feet by the Volkswagen was visible northerly from the front of the Chevrolet. Both sets of skid marks were in the middle of the road. There were no marks to indicate either driver had swerved to right or left prior to collision. Sergeant Hamilton stated the speed limit to be 65 miles per hour. He estimated Hamilton's speed at 40 m. p. h. and that of Slover at 50 m. p. h. prior to application of brakes.

Howard C. Moore observed the Volkswagen as it passed his house about 400 feet north of the collision scene at "roughly maybe 40 to 45 miles an hour." He heard the collision and saw the Volkswagen bounce to the rear and toward the ditch on the east side of the road. He went to the scene and found Mrs. Hamilton unconscious. Mr. Farmer was on the floor of the front seat; Mr. Hamilton was standing outside the car, supporting himself by the Volkswagen; Mrs. Farmer was lying in the road. Mr. Moore noted that Mrs. Hamilton had a cut on her forehead running into the hairline to the extent her scalp could be lifted from her head.

Clarence Parris, Mrs. Hamilton's uncle, had a familiarity with the road, gained through 60-years' residence nearby and several years' maintenance of the road. The road was sufficiently wide to permit two vehicles to pass at the crest of the hill. Charles Briscoe testified in similar vein.

Neither Mrs. Hamilton nor her mother had any recollection of the way the accident happened. At the time of the accident Mrs. Hamilton could drive an automobile and, although she had driven her parents into town, she and Mr. Hamilton usually went together for that purpose. The Volkswagen was jointly owned by, and jointly titled to, Mrs. Hamilton and her husband; however, she had never driven the Volkswagen.

Following the accident, Mrs. Hamilton was taken by ambulance to Baptist Memo-

rial Hospital in Kansas City, Missouri, where she was a patient until November 13, 1965. Mr. Farmer died at the accident scene and Mr. Hamilton died 15 days later.

At the time of the casualty, Mrs. Hamilton was teaching in Independence, Missouri. She returned to her job February 2, 1966, and has taught since that time without loss of time due to illness or injury. Her annual salary was $5,460 in 1965 and $6,307 at trial time.

Plaintiff's injuries were described by a number of doctors. Dr. Alfred W. Eklund was at the scene and ordered the ambulance. Dr. Paul R. Young, a general practitioner, saw plaintiff in emergency upon arrival at the hospital and noted her unconsciousness, the scalp laceration from left eyebrow to head crown, left leg laceration, deformity of right wrist, and abrasions and contusions over her body. She was unconscious for several days following surgery and suffered double vision. He referred her to Dr. Donald Piper, an orthopedist, who reduced the wrist fracture, and to Dr. Jack R. Cooper, a neurological specialist, who took care of the scalp injury. In following her, Dr. Young noted persistent numbness over her scalp, difficulty with fine movements of her right hand, memory difficulties, and pseudohypertelorism, a condition where eyes appear spread apart farther than they actually are. Dr. Walter R. Bass treated blurring of right eye and double vision resulting from a scarring of the right cornea. Dr. Robert A. Chandler, a plastic surgeon, treated her facial scars and noted that, after operating, she had permanent scars and a drawing of the eyebrows from the pull of the scars. Her final hospital diagnosis: "(1) concussion of the brain, severe; (2) fracture of the fourth and fifth ribs on the right side with slight displacement of fragments; (3) fracture of the scapula (shoulder blade) on the left; (4) fracture of the navicular (a bone of the wrist); (5) dislocation of the right lunate (wristbone); (6) severe laceration of the scalp; (7) laceration of the left knee; (8) multiple contusions and abrasions." Her hospital bill was $1,034.45. Her plastic surgery resulted in a hospital bill of $223.40 and a surgeon's fee of $180. She needs further plastic surgery estimated to cost $225 for hospital and doctor. Dr. Cooper's services cost $300; Dr. Piper's $150; Dr. Bass's $65. During home confinement following hospitalization, Mrs. Hamilton was helped by ladies from her church and by her son. She later hired help at $223.75.

At trial Mrs. Hamilton had no pain but had numbness from back of the right eye to the crown of her head. She had a marked vision defect. She had difficulty in use of her right hand. She was conscious of the changes in her face. She was absent from school for 65 days in 1965–66 and her pay figured at $30.33 per day, although she was not actually "docked" in pay on account of her absence.

Plaintiff-appellant's first contention is that the court erred in finding "a matter-of-law joint venture" and in setting aside her judgment as against Slover on that ground because "under the facts there were no grounds to charge this plaintiff with any joint-venture negligence of her husband." Defendant Slover responds, contending that plaintiff's own undisputed evidence was that plaintiff was joint owner of the automobile she occupied at the time of her injury, engaged in a joint enterprise with her husband-driver, and the negligence pleaded, proved, and submitted against her husband's administrator is binding upon and imputed to her so as to bar recovery against Slover.

Plaintiff-appellant's argument states that the undisputed facts show that "plaintiff was in the back seat of a jointly titled automobile driven by her husband, * * * the purpose of the trip * * * was for the plaintiff and her husband to assist the plaintiff's aged parents, and to drive them from their farm to town for groceries and supplies, a service that was regularly performed. * * * The collision occurred on the return from town to farm." Plaintiff showed also without dispute that her hus-

band shaved her father on these occasions. In suing her husband's administrator as well as Slover, she alleged, among other things, that both defendants drove at excessive speed and failed to keep to the right side of the county road; and she submitted for the jury to find that both defendants "drove on the wrong side of the road, or drove at an excessive speed," which the jury found. Slover denied plaintiff's alleged status as a guest passenger and alleged the negligence of her husband-driver as an affirmative defense.

█ Appellant recognizes the elements generally held to constitute a joint adventure: *There must be an agreement, express* or implied, among its members, a community of interest in the accomplishment of a common purpose, and a mutual right of control or to a voice in the direction of the enterprise. Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W.2d 109, 116[13-15]; State ex rel. Knight Oil Co. v. Vardeman, Mo., 409 S.W.2d 672, 676[5-7]; Restatement of Torts, 2d Ed., § 491, pp. 548-551; 48 C.J.S. Joint Adventures § 1(a), pp. 801-803.

█ The law in Missouri is that negligence of the driver of an automobile is imputable to an occupant and bars his recovery against third persons where the driver and occupant are joint owners engaged in a joint enterprise, either of business or pleasure, because neither has any more, nor any less, right of control than the other. Tannehill v. Kansas City C. & S. R. Co., Mo., 279 Mo. 158, 213 S.W. 818, 821-822[3]. The rule has been applied to a husband and wife who jointly owned an automobile on a pleasure trip with friends and to visit a nursery to inspect planting stock for their home, Roddy v. Francis, Mo.App., 349 S.W.2d 488, 491[1], and where the purpose was to take the wife to work after stopping to purchase groceries, Perrin v. Wells, Mo.App., 22 S.W.2d 863, 865[3].

█ Under another line of authority, similar in application, plaintiff's driver's negligence is imputed to plaintiff to bar recovery against a third person where plaintiff is the owner of the automobile, personally present in the automobile, and engaged with the driver in a joint venture, on the theory that the relationship of principal and agent or of master and servant exists between the owner and driver, and that the owner, being present and having control or right of control of his agent or servant, is bound by the negligence of the agent or servant. Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014, 1025[12]; Hill v. St. Louis Public Service Co., Mo., 64 S.W.2d 633, 635-636[1]; James v. Berry, Mo.App., 301 S.W.2d 530, 531[1].

There is no issue as to the nature and purpose of the Hamilton's journey at the time of this casualty. Plaintiff's own evidence established that Mr. and Mrs. Hamilton were engaged in the regular weekend common purpose of visiting and assisting her parents, and whether viewed as business or pleasure, was for their mutual benefit, and the use of their jointly-owned car in connection with the venture was subject to their equal right to control.

█ Just as plaintiff's own evidence established the joint venture between her and Mr. Hamilton, her own pleadings and evidence establish his negligence which is imputed to her in these circumstances to bar her recovery against Slover. The allegations of her husband's negligence are binding on plaintiff, Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644, 647[8]; defendant Slover is entitled to such judicial admissions, Wehrli v. Wabash R. Co., Mo., 315 S.W.2d 765, 773[9], MFA Mutual Ins. Co. v. Hill, Mo., 320 S.W.2d 559, 562-563[3]; and they, together with plaintiff's own undisputed evidence, established Slover's pleaded affirmative defense, i. e., Mr. Hamilton's imputable negligence in driving on the wrong side of the road and at an excessive speed, a case in which defendant Slover was entitled to a directed verdict at the close of the evidence, Wendorff v. Missouri State Life Ins. Co., 318

Mo. 363, 1 S.W.2d 99, 101[2], 57 A.L.R. 615.

Plaintiff-appellant's citations on this question are not in point. In Cunningham v. Pulver, Mo., 327 S.W.2d 227, the wife's suit was against the third person only and she did not plead and establish by her own evidence the negligence of her husband and her evidence did not establish as a matter of law that she and her husband were engaged in a joint enterprise at the time of the casualty. Wood v. Claussen, Mo.App., 207 S.W.2d 802, involved an attempt by a pedestrian to impose liability on defendant's wife who was not in the automobile when plaintiff was struck and the mission was one of defendant's alone. Bell v. Green, Mo., 423 S.W.2d 724, in appellant's own words, "turned on facts plainly dissimilar."

It is not necessary to discuss Instruction 3 which directed a verdict for Slover if Mr. Hamilton was negligent in driving on the wrong side of the road because such error, if any, is harmless when under the undisputed evidence and the law the defendant for whose benefit the instruction was given was entitled to a directed verdict against the party against whom it was given. Davis v. Quality Oil Co., Mo., 353 S.W.2d 670, 676[6, 7]; Crosby v. St. Louis County Cab Co., Mo.App., 320 S.W.2d 944, 947[2].

In her petition plaintiff alleged she "was bruised, contused, mashed, lacerated, shocked, and her head, spine, back, hips, legs and ribs were sprained, strained and injured; that she received a fracture of the right ribs; that she received a fracture of the left scapula and the left wrist; that her forehead, face and nose were lacerated, bruised and mashed; that she was confined to a hospital and under the care of physicians; that she has obligated herself for medical and doctor bills and is reliably informed that she will further obligate herself for hospital, doctor and medical bills; that her nervous system and internal organs were shocked, deranged and injured; that she has had and will in the future have great physical pain, soreness and tenderness in and about her injured parts; that prior to receiving her said injuries, plaintiff was a well, healthy and able-bodied woman, earning a living, but that since receiving the same her earning power and power to work and labor have been seriously lessened and impaired and she has lost and will continue to lose time from her work and earnings in amounts unknown to plaintiff."

In chambers, prior to voir dire on December 4, 1967, plaintiff requested leave to amend her petition to add allegations of right eye injury, permanent vision impairment, and brain injury. Appellant administrator objected on grounds he was not advised of the claimed injuries prior to deposition of plaintiff August 26, 1966, and prior to exchange of medical reports October 24, 1966, when the administrator received Dr. Chandler's report of his plastic surgery and the hospital report and prior to appellant's examination of plaintiff by Dr. Nicholas S. Pickard January 13, 1967; that appellant was not advised of such claims and did not receive such additional medical information prior to plaintiff's second deposition November 24, 1967; that appellant was not advised of the claimed eye damage until six days before trial when plaintiff advised of the requested amendment by letter; that the November 29, 1967, report of Dr. Bass, who treated plaintiff's eyes, was not received until December 1, 1967; that appellant was not advised of claimed brain injury until the day of trial, December 4, 1967, when appellant received a copy of the December 1, 1967, report of Dr. Cooper. The court denied plaintiff's request for leave to amend to allege brain injury and granted leave to add an allegation "that her right eye was injured and that her vision has been permanently impaired."

Appellant administrator charges the court erred in permitting plaintiff to amend to claim eye damage on the first day of trial and in allowing testimony of Drs. Bass

and Young when their reports were not furnished until December 1, 1967, and from Dr. Cooper when his report was not furnished until December 4, 1967. The substance of appellant's argument is that the court's actions deprived defendant Morris of an opportunity to prepare to meet the added allegation and the evidence in such medical reports and thereby prejudiced defendant Morris in maintaining his defense upon the merits.

There are other facts bearing on this question in addition to those contained in appellant's objections. Appellant had, for over a year prior to trial, copies of plaintiff's hospital report which noted, among other things, plaintiff's head injuries, mental confusion, and double vision. Dr. Pickard's report of examination of January 24, 1967, on behalf of appellant noted plaintiff's complaints of memory difficulty, loss of strength and inability to close fingers of right hand, and stiffness of right hand. When her deposition was first taken by appellant August 26, 1966, plaintiff stated that she had seen the eye specialist, Dr. Bass; that she suffered eye weakness from the blow to her head; that she could not see nearly as well as before the accident because her right eye vision was now blurred; and that Dr. Bass found a scar on her right retina. Appellant did not request a second medical and, upon second deposition November 24, 1967, plaintiff had not received written reports from Drs. Bass, Young, and Cooper which plaintiff did secure for appellant prior to or at trial time. Appellant did not couple his objection to the amendment and receipt of the doctors' testimony with a request for continuance and did not undertake to demonstrate how he would be prejudiced by a continuance if not prepared to meet the amendment and evidence.

Granting leave to amend a pleading and receiving evidence pursuant to such amendment are matters involving the exercise of judicial discretion and the trial court is not in error unless an abuse of such discretion is shown. Davis v. Kansas City Public Service Co., Mo., 233 S.W.2d 679, 683[3]; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 363 [4–6].

These circumstances are not those indicative of an abuse of discretion under the cases. For example: In Rodenberg v. Nickels, Mo.App., 357 S.W.2d 551, 554[1], the trial court was held not to have abused its discretion by permitting plaintiff, on the second day of trial, to amend a second time to allege broken transverse processes, whiplash, and kidney damage after an original petition alleging generally injuries to head, body, limbs, and spine, and over defendant's request for a continuance. In Gaines v. Schneider, Mo.App., 323 S.W.2d 401, 407–411[8, 9], the court discussed several authorities including Simon v. S. S. Kresge Co., Mo.App., 103 S.W.2d 523, cited by appellant, and held that an amendment during trail to add injuries relating to preexisting arthritic condition and denial of a continuance to prepare to meet the new allegation did not constitute abuse of discretion because defendant was not restricted in his cross-examination of plaintiff's expert on that subject nor in her examination of his own expert on the subject. In Davis v. Kansas City Public Service Co., supra, 233 S.W.2d l. c. 683–684[2–4], it was not an abuse of discretion to permit an amendment at trial to allege compression fracture of vertebra and to deny request for continuance where defendant met such claim through plaintiff's own medical evidence.

Appellant's citations do not dictate a finding of abuse of discretion here. Parsons Construction Co. v. Missouri Public Service Co., Mo., 425 S.W.2d 166, simply held the trial court did not abuse discretion in refusing an in-trial amendment to allege special items of damage. Simon v. S. S. Kresge Co., supra, found no errors in the trial court's grant of a new trial for denial of a continuance to defendant following allowance of an amendment which added a new item of special damage not related to prior pleading or discovery. In

Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., Mo.App., 317 S.W.2d 841, it was not an abuse of discretion to deny permission to defendant at trial to file amendments to answers to interrogatories to disclose new witnesses it wished to call at trial, and a continuance would be prejudicial because plaintiff had a problem of again securing out-of-state witnesses.

Appellant administrator charges another abuse of discretion in failing to declare a mistrial in connection with matters of brain injury and memory impairment. When leave to amend to allege brain damage was denied, the court recognized prior "allegation of head injuries, there are certain things as far as amnesia as to a certain period of time that are certainly properly in the case. It doesn't blot out anything in that area completely, it simply avoids this problem of all of a sudden saying that these difficulties with the hand is related to a brain injury and not to the fracture of the wrist." While on the stand Dr. Cooper read from his report: " 'Mrs. Hamilton remained amnesic for the first ten days of her period of hospitalization. She has noticed since her release that her memory is not quite as acute as it was. She has observed she now must write notes to herself and carefully outline a program of attainment in school in order to accomplish her goals satisfactorily. This represents a change in comparison to her pre-injury performance in the art of school teaching. She has experienced a persistent increase in the difficulties of remembering telephone numbers. An example of this difficulty represents a persistent confusion in rendering upon demand her son's address accurately.' " Appellant asked for a mistrial on the ground this testimony "concerning difficulty in remembering at the present time * * * can only relate to brain damage." Denial of mistrial was not an abuse of discretion because comparison of the testimony with the court's ruling shows it not to have invaded the excluded province of relating hand difficulties to brain injury.

Similarly, the court's denial of a mistrial in connection with plaintiff's son's testimony was not an abuse of discretion by permitting invasion of forbidden areas. John Edwin Hamilton was asked, "What has been the most significant change that you have been able to detect before and after?" John responded, "* * * And then, of course, she has complained to me herself about different things, kind of a numbness in her head, her memory not being as good as it used to be, having trouble to pick up things with one of her hands * * *." Appellant has cited no authority to consider in connection with these charges of abuse of discretion.

Appellant next complains that hypothetical questions on causation of injuries propounded to plaintiff's doctors "contained elements and facts not introduced into evidence, referred to inconsistent facts and findings and were not supported by evidence." He argues that the hypothetical questions permitted consideration of speed of the Volkswagen at 40 m. p. h. and of the Chevrolet at 50 m. p. h. when the evidence was that such speeds were prior to application of brakes.

Hypothetical questions should be predicated on the evidence and should not assume facts not in evidence, Sneed v. Goldsmith, Mo.App., 343 S.W.2d 345, 352 [4], Stipp v. Tsutomi Karasawa, Mo., 318 S.W.2d 172, 174(2], Henson v. St. Louis-San Francisco R. Co., 301 Mo. 415, 256 S. W. 771, 774[1], Bunch v. Wagner, Mo. App., 275 S.W.2d 753, 757[6], Schrader v. Kessler, Mo., 178 S.W.2d 355, 358[4]; however, it cannot be said that the hypothetical questions violated the foregoing authorities and that the court abused its discretion in connection with such questions. The objection to the hypothetical question in each situation is typified by the last such question propounded to Dr. Young, the objection being it "does not

contain facts which are in evidence, and contains facts which are not in evidence and, therefore, is prejudicial and improper." This is not sufficient objection to apprise a trial court that counsel was objecting to assumption in the question of speeds at collision of 40 and 50 m. p. h. when the evidence is that such speeds were existent prior to application of brakes immediately preceding collision and where there was no real dispute of the facts of the collision.

The administrator charges that instruction 5, which directed a verdict against him, was erroneous because it submitted "excessive speed" as well as "drove on the wrong side of the road" when there was no evidence of excessive speed. Gregorc v. Londoff Cocktail Lounge, Inc., Mo., 314 S.W. 2d 704, 707[2]; Green v. Guynes, Mo., 235 S.W.2d 298.

This contention is without merit because there was evidence to justify submission of excessive speed as a ground of recovery. In addition to the estimates of the speed of the vehicles, there was evidence to show the collision occurred at the crest of a hill in the middle of a narrow, one-lane, dirt and gravel road, the length of skid marks, the absence of marks to indicate any swerving, and the amount of automobile damage and force of impact. Such physical facts as well as the estimates of speed were proper for a jury to consider and were sufficient to submit whether Mr. Hamilton drove at an excessive speed. Wolfe v. Harms, Mo., 413 S.W.2d 204, 210[2–7].

During final closing argument, plaintiff stated, "Gentlemen, let me tell you this. Don't you know that if the road on October 16, 1965, had been any different than you see it in (plaintiff's) Exhibits 7 through 14 that these people would have had pictures in here, enough of them to wallpaper this court room, because they knew about this the day it happened, and Mr. Barbieri and I didn't have the privilege of representing Mrs. Hamilton until a time after that. But on the day this happened—." Then followed objection by appellant and request for mistrial on ground the argument injected an issue of insurance coverage. The court denied the request but directed the jury to disregard reference to things not in evidence and "particularly as to when one set of attorneys came in or when the others first learned about this matter."

In personal injury actions, it is generally reversible error to directly or indirectly show that defendant carries liability insurance. Page v. Unterreiner, Mo. App., 106 S.W.2d 528, 537[19]; 27 Mo. Dig. Trial ⚷133(2); 3 Mo.Dig. Appeal & Error ⚷925(3). Insurance was, of course, in the case because both defendants carried liability insurance and their companies were the subject of appropriate questions on voir dire qualification of the jury; however, appellant's argument is that the reference in plaintiff's closing argument constituted a "bad faith" and prejudicial injection of insurance in the case.

As with other matters previously discussed, control of arguments is a matter within the discretion of the trial court. Handshy v. Nolte Petroleum Co., Mo., 421 S.W.2d 198, 202[7, 8]; Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W.2d 130, 135[8]. In the context of all the arguments as well as the quoted argument itself, it cannot be said that the court's failure to take the drastic action of declaring a mistrial was an abuse of discretion. Both defendants in closing arguments charged that plaintiff's pictures did not truly represent the road condition at time of the casualty; for example, "we know the road wasn't like these pictures have been portrayed to be * * *"; "I am sorry we didn't have any photographs of the road as it was on this day * * *"; "frankly, gentlemen, those pictures just aren't true"; "that road just wasn't like these pictures at the time this accident happened." Thus, it is seen that the subject of plaintiff's argument was not insur-

ance but accuracy of pictures. Such was a proper subject for argument and was not the veiled (but not erroneous) reference to insurance criticized in Faught v. Washam, Mo., 329 S.W.2d 588, 601, and the direct erroneous reference to insurance in Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 968[8].

The administrator's final complaint is that the verdict is excessive and is so excessive, unreasonable and unwarranted as to show on its face that it is based on bias, prejudice, passion and sympathy on the part of the jury and against appellant, and results also from the errors previously discussed.

In addition to the injuries already stated, it should be noted that when Dr. Eklund arrived at the accident there was a lot of blood on plaintiff and, in wiping her eyes, he noticed her unconscious condition. Her pupils were fixed to light and had a "slow weave" motion. Her forehead and scalp laceration was bleeding profusely. At the hospital her right wrist had to be set and splinted. She remained unconscious ten days, was amnesic, retrograde to beyond the accident, and had double vision. Dr. Young had the opinion the wrist and hand disability is permanent as is the scar deformity of plaintiff's face. The scalp wound was an avulsion laceration which "in addition to the cut, it pulls the scalp back and lays bare the bone." Dr. Cooper as late as November 27, 1967, noted persistent numbness over plaintiff's right forehead and scalp. Her hand gives trouble in teaching and her memory has bothered her. She has a suggestive loss of tissue below her right eyebrow and is permanently disfigured by asymmetry in smiling and the pseudohypertelorism. She has scarring of the right cornea resulting in blurred vision, requiring additional eye correction, and is a permanent distortion. She had hospital expense of $1,253.85 with $100 additional anticipated expense for plastic surgery. She had $838.40 in doctor bills and anticipates $125 additional for her plastic surgeon. Hired help cost $223.75, and her time loss at school was the equivalent of $1,971.45.

All injury verdicts must stand on their own facts but should also be reasonably consistent with other comparable cases. This verdict may be said to be supported by Price v. Nicholson, Mo., 340 S.W.2d 1, 95 A.L.R.2d 599, where a 1959 award of $15,000 was affirmed for a man who suffered three permanent scars of forehead and arm, two permanent scars on the cheek and lower lip, skull fracture, 2 years of headaches, loss of seven teeth and $966.50 wages, and $857 medical and dental bills. Of particular significance was the jury's "better opportunity to understand the extent of * * * disfiguration and other physically visible damage." 340 S.W.2d l. c. 12[9]. Support may be found also in Stephens v. Guffey, Mo., 409 S.W.2d 62, a 1966 decision affirming an award of $19,670 to a woman suffering radiating nerve pain and numbness with some degree of permanency following neck and back injury in a rear-end collision. The court recognized "'there is no precise formula for gauging whether a verdict is excessive.'" 409 S.W.2d l. c. 70[5].

Appellant concedes he has no Missouri cases involving same or similar injuries and his citations, Miller v. Multiplex Faucet Co., Mo., 315 S.W.2d 224 (1958), Corte v. St. Louis Public Service Co., Mo., 370 S.W.2d 297 (1963), Murphy v. Graves, Mo., 294 S.W.2d 29 (1956), and Petersen v. Ruane, Mo., 336 S.W.2d 517 (1960), do not persuade that this verdict is erroneously excessive or that a remittitur is required.

Finally, it is contended by plaintiff-appellant that the court erred in reducing her judgment against the administrator "for the reason that medical payments purchased as part of a liability insurance contract and made pursuant thereto cannot be credited or deducted from a judgment."

Edwin W. Hamilton's liability insurance policy covering the Volkswagen contained a medical payments clause and, pursuant to the policy, Mr. Hamilton's insurer paid $500 to plaintiff as reimbursement for medical expense incurred as a result of this casualty. These matters were stipulated prior to trial as was agreement that no reference to the payment be made before the jury and that it be ruled by the court following the verdict. Upon posttrial motion of the administrator, the court credited the payment to the verdict against the administrator and entered judgment against him for $18,000.

This precise question does not appear to have been decided in Missouri, but Yarrington v. Thornburg, Del., 205 A.2d 1, 11 A.L.R.3d 1110, is directly in point. Plaintiff was a passenger in an automobile driven by the tortfeasor, Thornburg, who carried liability insurance covering bodily injuries and property damage. The policy also included agreement to pay medical expenses to $5,000 suffered by injury or in insured's automobile. Defendant tortfeasor's company paid plaintiff $5,000. There was no express provision for deduction of the amount from any verdict obtained by plaintiff against defendant. The plaintiff in an attempt to resist the credit contended that the credit was improper because it was payment from a collateral source. The Delaware court rejected the argument. "The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself. * * * Obviously, * * * the fund of $5000 was directly created by Thornburg. His purchase of the insurance and payment of premiums were the sole cause for the existence of the fund and we are unable to perceive any valid reason why he should not receive credit for the fund thus created by him." 205 A.2d l. c. 2–3[2, 3]. The same reasoning is in Adams v. Turner, D.C., Dist. of Col., 238 F.Supp. 643, 644–645. "The philosophy underlying the Collateral Source Rule seems to be that either the injured party or the tort feasor is going to receive a windfall, if a part of the pecuniary loss is paid for by an outside source and that it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tort feasor. This conclusion seems to be based on substantial justice. This reasoning, however, does not apply in a situation where the collateral source is the defendant himself. Under those circumstances no one gets a windfall and if a recovery were allowed under those circumstances the result would be that the plaintiff would receive a double recovery and that the defendant would be mulcted twice for the same item of damages. Suppose, for example, the defendant himself paid the plaintiff's entire medical bill prior to the institution of the action or prior to the trial. Obviously the plaintiff would not be paid twice for the same item and would not be permitted to recover his medical bills as an item of special damages. * * * Here the defendant did not herself pay the medical bills but brought into being at her own expense an insurance policy out of which the medical bills were paid. She, therefore, is the collateral source and she would be mulcted twice and the plaintiff would receive an undeserved double recovery if, after the plaintiff's medical bills were paid by the defendant's insurance company under a policy for which the defendant paid the premium, the plaintiff were allowed to recover the same item."

Plaintiff-appellant cites Travelers Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418, 19 A.L.R.3d 1043, and Forsthove Bros. v. Hardware Dealers Mut. Fire Ins. Co., Mo.App., 416 S.W.2d 208, but they involve questions arising from assignments

by an insured to his insurance company of his cause of action for personal injuries against a third-party tortfeasor and the court simply held such assignments to be prohibited under the law of Missouri. Mr. Hamilton's insurer, however, is not attempting to recover against a third-party tortfeasor on a purported assignment of its insured's cause of action; his administrator seeks only to have credit against any judgment rendered which it must pay for the $500 advanced in payment of plaintiff's medical expense. Mr. Hamilton's purchase of such coverage is the source of the payment and credit for such payment prevents Hamilton's estate from twice paying that amount. To do otherwise would be to permit double recovery.

Plaintiff-appellant also argues that a single judgment against two or more defendants cannot be reduced in favor of one such defendant. The argument is without merit because the judgment is against but one defendant and, if it were against two defendants, the court's action simply recognizes a credit on the amount due from defendant administrator.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, P. J., STORCKMAN, J., and HOLMAN, Alternate J., concur.

SEILER, J., not sitting.