**SHELTER MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Steven Anthony GANAWAY, Respondent,**

and

**Craig Alan Scott, Defendant.**

**No. WD 36501.**

Missouri Court of Appeals, Western District.

July 16, 1985.

Duane E. Schreimann, Hendren and Andrae, Jefferson City, for appellant.

Thomas Strong, Mathew W. Placzek, Jeffrey W. Bates, Strong, Placzek & Wooddell, P.C., Springfield, for respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

This is a suit for declaratory judgment in which appellant, Shelter Mutual Insurance Company, seeks to determine the extent of its policy liability under medical payments coverage. The trial court held the company to be obligated by its contract to the extent of its medical payment limit in addition to the limit of general liability coverage and Shelter Mutual appeals. Affirmed.

The policy in question covered a 1980 Honda being driven by one Scott and provided limits of $50,000.00 bodily injury liability as to any one person and $5,000.00 per person medical payments. An accident occurred in January, 1981 in which respondent Ganaway, a passenger in the car was injured. The extent of Ganaway's injuries are such that the full liability limit of the

policy is involved and, for purposes of this action, liability and an ultimate verdict exceeding $50,000.00 are conceded. Shelter Mutual has offered to pay Ganaway $50,000.00 but Ganaway has declined contending he is entitled to an additional sum of $5,000.00 under the policy's medical payment coverage. Ganaway's medical expenses had, as of the date of presentation of evidence, exceeded $48,000.00. The trial court ruled that Shelter Mutual was obligated to pay medical expenses up to the $5,000.00 policy limit without impairment of or reduction in the liability coverage limit of $50,000.00.

On this appeal, Shelter Mutual argues that this decision was in error, first, because the terms of the policy allow it to set off medical payments against the limit of liability coverage and, second, because Missouri common law recognizes the right of set-off if the fund which creates the medical payment coverage is created by the tort-feasor.

Turning first to the policy provision, the applicable contract language states:

"The amount of any payment under this Coverage C to or on behalf of any person shall be applied toward the settlement of any claim or the satisfaction of any judgment or damages entered against any insured because of bodily injury to such person arising out of any accident to which bodily injury liability (Coverage A) applies."

■ As we understand Shelter Mutual's argument, they claim any medical coverage payment made to a liability claimant operates under this clause to reduce the limit of the company's exposure under bodily injury liability coverage. The language does not admit of this interpretation. The contract merely says that medical payments are included in the payment fund available to settle bodily injury liability claims and to satisfy judgments entered against insureds on this account. The paragraph makes no mention of nor does it purport to reduce the actual limits of coverage which the policyholder has purchased.

One case, cited and relied on by appellant and respondent has considered this precise point. In *MFA Insurance Co. v. Hollingshad*, 483 P.2d 330 (Okla.1971), Hollingshad was a passenger in the insured vehicle which was involved in an accident causing the death of one person and injuries to Hollingshad and one other. The policy limit was $5,000.00 for injury to one person and $10,000.00 for one accident. There was also $500.00 in medical payments coverage. The company settled the death claim for $5,000.00 and it was agreed Hollingshad and the other injured claimant would receive $2500.00 each exhausting the liability coverage limit for one accident. Hollingshad's medical expenses amounted to $1869.95. The question was whether Hollingshad was entitled to $500.00 in medical payments in addition to the $2500.00 liability coverage payment. The policy language was identical to that appearing in Shelter Mutual's policy here.

The court held that the only purpose of the policy clause quoted was to prevent a double recovery, that is, for the same medical expenses to be reimbursed once under the liability coverage and a second time under medical payment coverage. It also held the burden to be on the insurer to demonstrate that a bodily injury liability settlement or judgment actually compensated the injured party for the expenses claimed under the medical payment coverage feature. Hollingshad was held entitled to the additional medical payments under the facts of that case.

Here, even after payment of the full $5,000.00 of medical expense coverage, Ganaway yet has more than $43,000.00 of unreimbursed medical bills, unknown future medical costs and the general damages allowable for and attributable to virtual total, permanent disability. It cannot be contended with any efficacy that the facts present any prospect for dual recovery by Ganaway of any of his medical expenses. The policy language was correctly applied by the trial court to deny Shelter Mutual credit against its limit of liability coverage for any amount of payments made to reimburse Ganaway under

the medical payments coverage feature of the subject policy.

■ Shelter contends secondly that it is entitled to a set-off for medical payments coverage, despite the policy language, under "Missouri common law". Apparently what Shelter refers to is the collateral source rule which precludes a tort-feasor from reducing recoverable damages to the injured party by amounts of indemnification paid the injured party through his own insurance. *Hamilton v. Slover*, 440 S.W.2d 947 (Mo.1969), cited by Shelter, states the law to be as follows, quoting from *Yarrington v. Thornburg*, 8 Stoley 152, 205 A.2d 1, 11 A.L.R.3d 1110 (Del. 1964):

"The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit *the tortfeasor* to obtain the advantage of payments made by himself or from a fund created by him * * *" *Id.* 958 (Emphasis supplied).

Thus, in *Hamilton v. Slover, supra,* the court held the deceased Hamilton's estate entitled to credit on the judgment entered against it for $500.00 paid plaintiff pursuant to medical payment coverage which Hamilton's policy provided.

The problem with Shelter's use of this theory in the present case is that Shelter does not propose application of the $5,000.00 medical payment obligation to satisfy Scott's liability to Ganaway. Instead, Shelter argues, in effect, that its $50,000.00 liability coverage exposure is reduced to $45,000.00 merely because Scott has the optional medical payments insurance. This is not the holding of the *Hamilton* or *Yarrington* cases and is an attempt by Shelter to obtain a $5,000.00 windfall from the medical pay coverage for which it charged an extra premium. The benefit under the collateral source rule runs to the party who created the insurance fund by purchasing the coverage, not to the insurer.

The trial court correctly ruled, on the assumed facts of liability and the amount of provable damages, that policy coverage available to satisfy Ganaway's claim included $5,000.00 in medical pay and, to the extent Ganaway's medical and related expenses exceeded that sum, up to $50,000.00 in liability coverage.

The judgment is affirmed.

All concur.