Gladys McSORLEY and Charles McSorley, Appellants,

v.

Steven HAUCK, Respondent.

No. 19393.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 16, 1994.

---

Joseph A. Bohrer, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for appellants.

Ronald E. White, Williams, Robinson, Turley & White, P.C., Rolla, for respondent.

MONTGOMERY, Judge.

This is an appeal from a summary judgment in favor of Defendant. Plaintiffs sued Defendant Steven Hauck (Steven), seeking damages for Gladys McSorley's personal injuries and for Charles McSorley's loss of consortium. Plaintiffs' claim arose from a collision involving an automobile driven by Gladys McSorley and a pickup truck driven by Henry Hauck (Henry), who is Steven's brother.

Plaintiffs' petition alleges that on October 15, 1988, Gladys McSorley was operating an automobile in a northerly direction on Highway 28 in Pulaski County, Missouri, while at the same time, Henry was driving his truck in the opposite direction. He was towing a boat trailer that carried a boat belonging to Steven. Just prior to meeting the McSorley vehicle, Henry's boat trailer broke loose from

his truck, crossed the centerline, and collided with the McSorley vehicle.

The petition further alleges that at the time of the collision, Henry was acting for and on behalf of himself and Steven and that the two were engaged in a joint enterprise. Among the numerous negligent acts or omissions alleged is the failure to use a safety chain to connect the boat trailer to the truck, thus permitting the boat trailer to separate from the truck.

Steven's motion for summary judgment[1] alleges in pertinent part that he and his brother were not engaged in a joint enterprise because he had no control or right of control over the truck or boat trailer, both owned and operated by Henry on October 15, 1988. Steven alleges he was not present when Henry attached the boat trailer to the truck and was not present at the time of the collision between the boat trailer and McSorleys' automobile.

The motion for summary judgment was supported by the depositions of Henry and Steven and the pleadings before the court. Plaintiffs filed no opposing affidavits or other response to the motion.

On January 24, 1994, the court sustained the motion and entered judgment in Steven's favor after making the following findings:

> [T]here was no joint venture; that at best, the brothers shared their fishing equipment; that the plans for the brothers to fish together on the day in question was conditional on Defendant being able to join his brother at the river; that the Defendant was not present when his brother picked up his boat, which was attached to his brother's trailer; that the Defendant had no control or right of control over the means by which his brother would transport the boat that Defendant was loaning to his brother, and that as a matter of law, Defendant is entitled to judgment in his favor; that there is no genuine dispute of material facts.

Plaintiffs' sole point relied on reads as follows:

The trial court erred in sustaining Defendant's Motion for Summary Judgment because there is a genuine issue as to material fact and Defendant was not entitled to a judgment as a matter of law in that:

> (A) The evidence in the record establishes a joint enterprise. The Defendant and his brother agreed to participate together in a fishing trip for mutual pleasure. Each contributed property to the undertaking and each retained an equal voice in controlling the property to be utilized therein. Consequently, and as a matter of law, the negligence of Defendant's brother, if any, would be imputable to Defendant as a participant in the joint enterprise even though Defendant was not physically present when his brother picked up and transported the property that each had contributed to the enterprise; and

> (B) The fact of whether the Defendant and his brother each retained an equal voice in the management or control of the property which each had contributed to the fishing trip has not been determined, and is a disputed question of a material fact, which precludes summary judgment.

The appropriate standard of appellate review is found in *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993):

> When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by

---

**1.** Steven's motion was filed prior to the amendment of Rule 74.04 which became effective January 1, 1994.

the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* at 376 (citations omitted).

■ Because Plaintiffs did not respond to the summary judgment motion, we must take the deposition testimony of Steven and Henry as true. We view their testimony in the light most favorable to Plaintiffs and give Plaintiffs the benefit of all reasonable inferences therefrom.

Steven testified he owned the boat being transported by Henry at the time of the collision. Sometime prior to the collision date, Steven borrowed Henry's boat trailer to take his boat to the Gasconade River. He had not returned the borrowed trailer, and his boat remained on the trailer parked at his home on October 15, 1988.

On that date, Steven was on a deer hunting trip and camped near Fort Leonard Wood. Steven described the fishing plans as follows:

Q. And did you and Henry have any plans to use the boat or the trailer that day?

A. The possibility existed that he was going to be in the same position or a close place that I was going to be. He had been hired by a mutual friend to do some surveying on a piece of property over by the Gasconade River and when he told me that, I suggested that we go fishing and you know, if it was going to work out with him to go fishing that day and he would have time after he got his work done, I certainly didn't have anything to do that afternoon because it was too hot, that particular deer season was real warm and I suggested that maybe we go fishing that afternoon until I started to hunt again that afternoon and then he could go on back home.

Q. Did Henry have a boat.

A. He also had a boat.

Q. Was it your agreement that he would use his trailer and your boat?

A. Well, that was a possibility. At that time he lived in town and I lived out of town and so I didn't know whether it would be convenient for him to use his or to use mine and it didn't really matter. And I told him that if he would, if he wanted to or if it wasn't too much trouble, that he could use my boat, or get my boat and bring it down there if he wanted to.

The brothers planned to meet at the Waynesville–Crocker bridge around 10:30 on the accident date. According to Steven, the brothers would go fishing "should I get there and should he [Henry] get there."

When Henry failed to appear at the appointed place and time, Steven made several phone calls and learned of the accident. Afterwards, he talked with Henry who said the locking mechanism on the hitch came apart. Although the boat trailer was equipped with a safety chain, Henry did not indicate whether or not it was connected to his truck prior to the accident.

Henry's deposition testimony is basically consistent with Steven's concerning their plans on fishing together. Henry testified that he drove his truck to Steven's home on the date in question and picked up his trailer and Steven's boat. Henry had agreed to "run some levels" (surveying elevations) for a friend who lived near Waynesville. He planned to meet Steven after completing this work. Henry was on his way to this job when the accident happened.

Henry testified that Steven did not control the operation of his truck prior to the accident and that Steven did not own the truck or the boat trailer involved in the accident. Although Henry's trailer was equipped with a safety chain, he did not attach it to his truck before the accident because it was "just a little bit too short" and he was "having trouble with the [attaching] bolt and nut."

While traveling to his job site, Henry said that he rounded a curve, hit a bump, and saw through his rearview mirror that the trailer had separated from his truck. The boat and trailer veered to the left and collided with Plaintiffs' car.

Henry testified that he owned a fishing boat that could be transported in the back of his truck. However, he recalled that Steven indicated it would be more convenient to take his boat because it was already on Henry's trailer. Had Steven refused his permission to use the boat, Henry would have respected his wishes.

Plaintiffs' theory of imputing Henry's negligence to Steven rests upon the showing that the brothers were engaged in a joint enterprise.

> There is no legal distinction between the phrases "joint enterprise" and "the prosecution of a common purpose." But a distinction has been made between a joint enterprise and a joint venture, even though the two terms are sometimes used interchangeably, on the basis that a joint enterprise is an undertaking for the mutual benefit or pleasure of the participants, while the term "joint venture" refers to a business enterprise, generally limited to a single transaction or course of transactions.

57B Am.Jur. 2D *Negligence* § 1770 (1989).

In *State ex rel. McCrory v. Bland*, 355 Mo. 706, 197 S.W.2d 669, 672–73 (1946), the Supreme Court indirectly acknowledged that, as opposed to a "joint adventure," a "joint enterprise" is an undertaking for mutual benefit or pleasure. Regardless of the terminology used, the Supreme Court said, "But if a joint undertaking be a joint adventure or joint enterprise, each member is responsible for the negligent acts of another if within the scope and object of the joint undertaking." *Id.*, 197 S.W.2d at 673.

■ The essential elements of a joint venture are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interests in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Perricone v. DeBlaze*, 655 S.W.2d 724, 725 n. 1 (Mo.App.1983); *Manley v. Horton*, 414 S.W.2d 254, 260 (Mo. 1967). Obviously, when the joint undertaking is for pleasure, the showing of a pecuniary interest in the undertaking is unnecessary. *See Hamilton v. Slover*, 440 S.W.2d 947, 952 (Mo.1969);[2] *James v. Berry*, 301 S.W.2d 530, 531 (Mo.App.1957); *Counts v. Thomas*, 63 S.W.2d 416, 419 (Mo.App.1933).

■ The critical issue here is whether Steven and Henry can be found by implication to have agreed to an equal voice in the management of the instrumentalities utilized in the fishing expedition. We agree with the trial court's finding that Steven had no right of control over the means by which his brother would transport the boat to the river. With Steven lacking an equal right of control, the trial court properly found that he was not engaged in a joint enterprise at the time of the accident.[3]

Citing to *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237 (Mo. banc 1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984), and *Hamilton v. Slover, supra*, Plaintiffs urge that "[b]ecause [Steven] owned the boat [he] had a right to be heard and to have his wishes respected as to the means by which *his boat* would be transported." Neither case supports Plaintiffs' view.

In *Johnson*, a "freight broker" was held liable as a joint venturer for the negligent acts of a co-venturer truck driver. For a commission, the freight broker had arranged for the truck driver to haul a load of steel. The Supreme Court noted that the parties undertook the project "for mutual benefit and profit," 662 S.W.2d at 241, and said that "[t]here is a mutual agency among the venturers for activities within the scope of the venture, and all have equal right of control." *Id.* Thus, the broker's right of control arose by operation of law from the parties' arrangements toward hauling a load of steel for

---

**2.** *Hamilton* was overruled on other grounds, as discussed *infra*.

**3.** Although not raised here, a very plausible argument could be made that, at the time of the accident, Henry was not operating his truck "within the scope and object of the joint undertaking." *McCrory*, 197 S.W.2d at 673. Henry was on his way to his job. It was only after completing his work that Henry intended to go fishing with Steven.

their mutual benefit and profit. These facts are unlike those before us.

The same can be said of *Hamilton*. There, plaintiff and her husband jointly owned an automobile being driven by her husband at the time of the accident. Plaintiff and her elderly parents were passengers in the automobile and on a trip to buy them groceries. In *Stover v. Patrick*, 459 S.W.2d 393 (Mo. banc 1970), the Supreme Court noted that although *Hamilton* made reference to the "existence of a joint enterprise for pleasure, actually joint ownership was the primary basis upon which the court concluded that the negligence of the driver-spouse should be imputed to the passenger-spouse." *Id.* at 398. Commenting further on *Hamilton*, the court said, "It would appear to be a fair inference ... that the husband's negligence would not have been imputed to the wife if the automobile had not been jointly owned." *Id.* In overruling *Hamilton* and other similar cases, the *Stover* court said:

> We are impressed by the reasoning in these cases holding that co-ownership of an automobile does not give a realistic right of control over its movement to a passenger-owner and that absent evidence of other facts which establish a basis for imposing liability on the passenger-wife for acts of her driver-husband, the negligence of the latter should not be imputed to the former, merely because of joint ownership of the vehicle.

*Id.* at 401. Therefore, Steven's mere ownership of the boat being transported gave him no right of control over the operation of the truck in which he was not riding.

▉ We recognize that the issue of control does not necessarily turn on Steven's absence from the collision and prior events. The decisive question is whether Steven had a *right to control* the direction of the enterprise. Such right is founded upon the agreement or understanding of the parties involved.

This premise is well articulated in W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 72, at 519–20 (5th ed. 1984), where the authors say:

> The prevailing view is that a joint enterprise requires something, beyond the mere

association of the parties for a common end, to show a mutual "right of control" over the operation of the vehicle—or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that companions on a pleasure trip, members of the same family, parties engaged in a commercial transaction, servants riding with the employer, or fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise. Nor, of course, is the fact that the passenger has requested the driver to make the trip for his benefit sufficient to establish such a right of control.

Because Steven was not a passenger and was not present when the trailer was attached, he clearly could not voice any directions to Henry. Therefore, Steven's right of control, if any, could only flow from the parties' agreement under a theory akin to agency principles. "There is a mutual agency among the venturers for activities within the scope of the venture...." *Johnson*, 662 S.W.2d at 241.

Here, the facts clearly reveal that the brothers made plans to meet for a fishing outing, i.e., an association of the parties for a common end. However, something beyond that must be shown to establish Steven's mutual right of control over the operation of Henry's truck and trailer.

Looking for "something beyond" in the parties' understanding, after according Plaintiffs all reasonable inferences from the record, we find nothing implying that they understood Steven had a voice in Henry's operation of the truck and trailer. The only understanding reflected in the deposition testimony was that Henry "could get my boat and bring it down there if he wanted to." The only reasonable inference from the

agreement is that Henry could "bring it down there" in a manner chosen by him.

Lacking a mutual right of control, Steven did not engage in a joint enterprise with his brother. Therefore, Henry's negligent acts are not imputable to him.

Because we have determined that, as a matter of law, the undisputed facts show Steven lacked the right of mutual control, prong B of Plaintiffs' point is denied. The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.