**Emma June OVENTROP, Plaintiff-Appellant-Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY, Defendant-Respondent-Appellant,**

and

**James Hudson, Defendant-Respondent.**

**Nos. 35903, 35904.**

Missouri Court of Appeals, St. Louis District, Division Three.

March 25, 1975.

Hullverson, Hullverson & Frank, E. Le-moine Skinner, III, St. Louis, for appellant.

Boas, Schneider & Walsh, John D. Schneider, St. Louis, James E. Godfrey, Inc., Samuel T. Vandover, St. Louis, for respondent.

GUNN, Judge.

We consider cross appeals of plaintiff Emma June Oventrop and defendant Bi-State Development Agency arising out of injuries incurred by Mrs. Oventrop in two separate falls on Bi-State buses. Defendant-respondent James Hudson was alleged to have been the catalyst for Mrs. Oventrop's first fall. The appeals center on the trial court's action in striking the testimony of a Bi-State driver and thereafter granting a new trial to Bi-State on the issue of liability on the basis that the trial court had erred in directing the testimony to be stricken. We affirm the trial court in part and reverse in part and remand for a new trial on all issues.

On October 20, 1969, as Mrs. Oventrop prepared to alight from a Bi-State bus, the bus stopped abruptly and Mrs. Oventrop was thrown to the floor and subsequently complained of injury to her left shoulder, right hip and lower back. Bi-State claimed that the sudden stop was made necessary when defendant Hudson, who had parked his auto at the curb, allegedly threw open his automobile door and exited from his auto on the street side in the path of the bus.

On May 14, 1971, while still under a doctor's care for treatment of her shoulder, hip and back, Mrs. Oventrop was in the process of alighting from a Bi-State bus when, once again, the bus came to a sudden stop throwing Mrs. Oventrop against the fare box. Bi-State's defense to the second incident involving Mrs. Oventrop was that an automobile traveling in front of the bus had stopped suddenly to avoid colliding with another car which had moved out from the curb into the lane of oncoming traffic. Mrs. Oventrop's evidence was that a thoracic outlet syndrome had developed from the two incidents and that an operation for the removal of her first rib had been performed in order to alleviate her disability; however, at time of trial she still complained of some physical difficulties and discomfort as a result of the two falls.

Mrs. Oventrop filed suit against Bi-State for $7,500 in each of two counts for injuries sustained as a result of the two falls. She also sued Hudson for $7,500 for allegedly having opened the left door of his parked vehicle in violation of a City ordinance into the path of the Bi-State bus in which Mrs. Oventrop was a passenger, requiring the bus driver to make an emergency stop and thereby causing Mrs. Oventrop's first fall on October 20, 1969. Hudson denied having opened an automobile door in the path of the bus or doing anything which would have triggered Mrs. Oventrop's fall.

The critical issue upon which our decision turns is the controversy surrounding the testimony of William White, the driver of the Bi-State bus in which Mrs. Oventrop fell on October 20, 1969. It was Mr. White's testimony that he was traveling about 15 miles per hour in heavy evening traffic in the lane next to parked cars. When his bus approached the rear end of a car parked at the curb, the car door suddenly opened into the path of the bus necessitating an emergency application of the bus brakes. When bus passengers called out that a woman had fallen in the bus, Mr. White pulled the bus to the curb, assisted the woman who had fallen, called a

Bi-State dispatcher, passed out investigation-information cards to passengers and discussed the accident with a policeman at the scene. He also gave information on the accident to a Bi-State supervisor whom he did not know. Mr. White also wrote Mrs. Oventrop's name and address on a card and noted that a Chevrolet Caprice, bearing license number K8H–373, was the car that had its door opened in the path of the bus. The Chevrolet was identified as belonging to defendant Hudson. Mr. White made out a report of the accident and filed it with the Bi-State office. In his discovery deposition taken in May, 1971, approximately one and a half years after the first accident, Mr. White denied having personally gathered information concerning the Chevrolet Caprice. Answers given in the deposition identifying who had written down the information relating to the car allegedly causing the accident were thus contradictory to Mr. White's trial testimony that he was the one who had supplied the information concerning the Chevrolet Caprice. The explanation given by Mr. White for his inconsistent testimony was that he had not had the benefit of his report at the time of his deposition, one and a half years after the accident; that he had not seen the reports nor had his memory refreshed by them until shortly before the trial, nearly four years after the report had been made. Added to the variance in Mr. White's deposition and direct testimony was Bi-State's answer to an interrogatory requesting the name of the person identifying Mr. Hudson's vehicle as the one causing the bus to stop abruptly. The answer to the interrogatory stated: "unknown Bi-State driver pointed out to supervisor, name of supervisor unknown."[1]

Seizing upon the discrepancy in Mr. White's deposition and trial testimony, Mr. Hudson's counsel moved, after the direct and cross-examination of Mr. White and over the objection of Bi-State's and Mrs. Oventrop's counsel, that Mr. White's testimony be stricken in its entirety. The trial court sustained the motion to strike, and Mr. White's complete testimony was stricken and the jury advised to disregard his deposition. The jury returned a verdict against Bi-State and in favor of Mrs. Oventrop for $5,000 as a result of injury from the first accident, and $10,000 for the second accident. Since the prayer for damages for injuries arising out of the second accident was $7,500, Mrs. Oventrop voluntarily remitted $2,500. The jury found in favor of defendant Hudson. Thereafter, Bi-State filed its motion for a new trial. The trial court sustained Bi-State's motion for a new trial only as to liability on the first accident for the reason that "the Court erred in misdirecting the jury to strike the entire testimony of witness White called by Defendant Bi-State for the reason as set out in part of paragraph 8(f) of defendant Bi-State's Motion (etc.) for a new trial." Paragraph 8(f) of Bi-State's motion for a new trial provided:

"f. The action taken by the Court, by its nature, prejudiced the Defendant Bi-State as a party, and made any verdict against Defendant Bi-State as a result of prejudice."

Bi-State has appealed claiming that since the striking of Mr. White's testimony prejudiced its entire case, the granting of a new trial limited only to the issue of liability on the first injury was too restrictive; that Bi-State should have a new trial as to all issues. Mrs. Oventrop has also appeal-

---

1. The answer to the interrogatory stating "unknown Bi-State driver" is illogical, as Bi-State had identified Mr. White as the bus driver in answer to an earlier interrogatory. What was apparently intended by the answer was that it was unknown to Bi-State who had filled out the accident report; that the Bi-State driver (Mr. White) had pointed out the car to a supervisor whose name was unknown. Bi-State's explanation for the answer to the interrogatory is consistent with Mr. White's statement that he did not know the name of the supervisor to whom he had made his report, but it is not consistent with Mr. White's trial testimony and the evidence that he had personally identified Mr. Hudson's car and written the information himself.

ed the trial court's action in granting Bi-State a new trial and in failing to grant her motion for a new trial against defendant Hudson for the obvious reason that should Bi-State be successful in obtaining a verdict in its behalf on the retrial of the first accident, without Hudson in the case, there would be no party from whom she could recover for injuries arising out of the first accident.

The facts completed, we now discuss the applicable law. It is axiomatic that trial courts are vested with substantial discretion over matters of fact and thus matters affecting the determination of fact issues in ruling on motions for new trial. Hawley v. Merritt, 452 S.W.2d 604 (Mo. App.1970); Union Electric Co. v. Turner, 446 S.W.2d 430 (Mo.App.1969). Further, a trial court has broad discretion to determine whether its ruling during the course of a trial was prejudicial and substantially influenced the verdict and to grant a new trial on the basis of that determination. Dorrell v. Moore, 504 S.W.2d 174 (Mo. App.1973). And a reviewing court is more liberal in upholding the action of the trial court which has sustained a motion for a new trial than when the trial court has denied such relief. Cook v. Cox, 478 S.W.2d 678 (Mo.1972); Hicks v. Shanabarger, 241 Mo.App. 476, 236 S.W.2d 49 (1951). Thus, our review of the trial court's exercise of its discretion in determining the existence of prejudicial effect in striking testimony is limited to the determination of whether there has been an abuse of discretion in finding prejudice. Cook v. Cox, supra; Blase v. Bi-State Development Agency, 503 S.W.2d 463 (Mo.App.1973).

Here, the trial court has determined that Bi-State was prejudiced as a party by the trial court's exclusion of all the testimony of a key witness. The trial court was correct in finding that it erred in striking Mr. White's testimony, as support for the sanction imposed was lacking. The trial court's sanction was too harsh.

Rule 61.01, V.A.M.R. authorizes sanctions where there has been a refusal to comply with the rules of discovery and where interrogatories have been answered untruthfully or evasively. Hilmer v. Hezel, 492 S.W.2d 395 (Mo.App.1973), There is no evidence that Bi-State deliberately or intentionally concealed information from the parties which would require the imposition of the sanction of striking Mr. White's testimony. See Laws v. City of Wellston, 435 S.W.2d 370 (Mo.1968); Thomas v. Fitch, 435 S.W.2d 703 (Mo.App.1968). Bi-State's mistake was innocent and the harm, if any, can be undone on retrial. Missouri State Park Board v. McDaniel, 473 S.W.2d 774 (Mo.App.1971). Erroneous exclusion of competent evidence relative to the issues to be considered forms sufficient basis for granting a new trial. Noel v. Roberts, 449 S.W.2d 572 (Mo. 1970); Jones v. Atlanta Life Insurance Company, 247 S.W.2d 314 (Mo.App.1952). The trial court, in reconsidering its rulings on discretionary matters, may order a new trial "if it believes its discretion was not wisely exercised and that prejudice to the losing party resulted." Union Electric Co. v. Turner, supra, at 433.

The paramount basis for the trial court's granting a new trial to Bi-State was that Bi-State had been prejudiced as a party, making any verdict against it a result of prejudice. We find no error in that determination. The trial court did not, however, go far enough in its granting a new trial only as to Bi-State and only as to the issue of liability on the first accident of October 20, 1969. It is inconsistent to find that bias existed to the extent found by the trial court and to solve the defect by granting a new trial only on the restrictive basis ordered here. The finding and solution are antithetical and dissonant. The trial court, by its ruling, has made it manifest that disallowing Mr. White's testimony had the effect of making the consequential prejudice against Bi-State pervasive throughout the entire case, including the second accident, as Mrs. Oventrop has as-

serted that her injuries were aggravated by the May 14, 1971 incident. We find no abuse of the trial court's discretion in deciding that Bi-State had been prejudiced as a party and that a new trial should be granted to Bi-State for the reason that the verdict against it was maculated by prejudice. But we must go farther.

In Artstein v. Pallo, 388 S.W.2d 877 (Mo. banc 1965), it was pointed out that the practice of limiting a new trial to less than all issues was appropriate only when there would be an absence of prejudice or injustice to a party. But in this case, since the trial court found Bi-State to have been prejudiced as a party, it would be incongruous to limit the new trial to a single issue and to a single party. We therefore hold that having determined that Bi-State was prejudiced as a party by its ruling and that the verdict against Bi-State was a result of such prejudice, the trial court erred in no setting aside the entire verdict. The bias and prejudice found by the trial court vitiated the verdict in its entirety, and the infirmity can be cured only by setting aside the verdict and awarding a new trial as to all issues. The prejudicial effect on liability by striking the testimony of Mr. White is so interwoven and blended with the prejudicial effect on damages that a new trial must be granted to all issues. Deaner v. Bi-State Development Agency, 484 S.W.2d 232, 234 (Mo.1972); Noel v. Roberts, supra; McConnell v. Pic-Walsh Freight Co., 432 S.W.2d 292, 301 (Mo.1968); Skadal v. Brown, 351 S.W.2d 684, 690 (Mo.1961); Marshall v. Ozark Gas and Appliance Co., Inc., 506 S.W.2d 474, 476 (Mo.App.1974); Heald v. Cox, 480 S.W.2d 107, 112 (Mo. App.1972); Stubbs v. Kansas Terminal Ry. Co., 427 S.W.2d 257, 260 (Mo.App.1968); Bischoff v. Dodson, 405 S.W.2d 514, 520 (Mo.App.1966); Thomas v. Durham Motors, Inc., 389 S.W.2d 412, 416 (Mo.App. 1965).

While most of the above citations refer to the size of the monetary verdict reflect-ing prejudice too great to be cured by remittitur and thus requiring a new trial on all issues, the same precept would apply as consonantal and a corollary on the issue of liability where it has been determined that one of the litigants has been prejudiced as a party. Remand only on the issue of liability does not erase or purge the damage of prejudice, for if the jury were actuated by bias and prejudice in its findings on one issue, a fortiori, prejudice has extended to all other issues, particularly if the trial judge has found Bi-State prejudiced as a party and the verdict rendered against it as a result of such prejudice. Taylor v. St. Louis Public Service Co., 303 S.W.2d 608, 612 (Mo.1957).

As the issues in this case are inextricably entwined, so are the parties. It is, consequently, essential to include all parties for the new trial in order to preserve fairness and avoid disadvantage to any of the litigants. Duboise v. Railway Express Agency, Inc., 409 S.W.2d 108 (Mo.1966); Sadlon v. Richardson, 382 S.W.2d 9, 12 (Mo.App.1964). The striking of the bus driver's testimony prejudicially affected Bi-State's ability to mount a defense that the fault of Mrs. Oventrop's accident lay with defendant Hudson. The trial court's ruling also prejudicially affected Mrs. Oventrop's capacity to fully present a case against defendant Hudson, for it was Mr. White's testimony which identified the Hudson car as causing the accident. Hence, a new trial must be granted as to both defendants Bi-State and Hudson, since the striking of testimony would affect each defendant's liability for damages. Since the verdict as to one defendant was tainted, a new trial as to both defendants must be granted. Sadlon v. Richardson, supra; Hicks v. Shanabarger, supra.

The parties have raised some other issues which might again be presented on the retrial of this case, and which we therefore must consider here. At trial, defendant Hudson submitted a converse in-

struction which was at variance with Mrs. Oventrop's verdict director.[2] Mrs. Oventrop's verdict director did not make reference that a finding of negligence against defendants would be necessary in order for Mrs. Oventrop to recover, whereas Hudson's converse allowed the jury to find for Hudson unless Hudson was negligent, a proposition not submitted to the jury in Mrs. Oventrop's verdict director. The giving of Hudson's converse was therefore error, as a converse must be in substantially the same language used in the verdict director being conversed. Frogge v. Nyquist Plumbing & Ditching Co., 453 S.W. 2d 913 (Mo. banc 1970); Brewer v. Swift & Co., 451 S.W.2d 131 (Mo. banc 1970). On retrial, any converse submitted by Hudson should conform with the dictates of the Frogge and Brewer cases.

█ During his examination of Hudson, Bi-State's counsel sought to read into evidence portions of Hudson's discovery deposition which were alleged to contain statements inconsistent with his trial testimony. Bi-State's request was refused, and it contends that the trial court's ruling in that regard was error. Generally, a deposition is not to be read in evidence when the deponent is present, except as an admission against the witness' interest or to impeach his testimony. Demott v. Dillingham, 512 S.W.2d 918 (Mo.App.1974). Assuming a proper foundation is laid for impeachment,[3] if a witness denies or equivocates about having made a prior inconsistent statement, evidence may be introduced to establish that an inconsistent prior statement had been made by that witness. State v. McCabe, 512 S.W.2d 442 (Mo.App.1974); Aboussie v. McBroom, 421 S.W.2d 805 (Mo.App.1967). It is proper to cross-examine a witness about relevant matters for the purpose of testing his credibility, Thomas v. State, 512 S.W. 2d 116 (Mo. banc 1974), and a deposition is a suitable form of admissible evidence to establish a prior inconsistent statement for impeachment purposes as affecting the credibility of a witness. State v. Atkins, 494 S.W.2d 317 (Mo.1973). Therefore, examination into inconsistencies between Hudson's direct and deposition testimony, if sought, should be permitted on retrial if intended for impeachment purposes.

█ Bi-State also complains that error was committed by the trial court in permitting Mrs. Oventrop's physician to testify and reply to a hypothetical question, which, according to Bi-State, improperly assumed that Mrs. Oventrop's thoracic outlet syndrome injury was related to the second accident of May 14, 1971. Mrs. Oventrop's physician testified that plaintiff's thoracic outlet syndrome was caused "certainly" and "in particular" by the second accident. In so answering, it was assumed that Mrs. Oventrop injured her left shoulder in the second accident because such injury was caused "by a wrenching or stretching of the shoulder away from the middle of the body." A hypothetical question containing assumed facts not in evidence is improper. Hamilton v. Slover, 440 S.W.2d 947 (Mo.

2. Mrs. Oventrop's verdict director against Hudson provided:

"Your verdict must be for plaintiff and against said Defendant James Hudson on Count II of Plaintiff's Petition if you believe:

"First, Defendant James Hudson left his automobile from the side facing the street in such a manner as to interfere with the right of way of the driver of the approaching bus; and, second, such conduct, either directly caused damage to plaintiff or combined with the acts of Bi-State Development Agency to directly cause damage to the plaintiff."

Defendant Hudson's converse to Mrs. Oventrop's verdict director provided:

"Your verdict must be for Defendant James Hudson and against plaintiff, unless you believe that Defendant James Hudson was negligent as submitted in Instruction No. 5 and that plaintiff sustained damage as a direct result thereof."

3. See State v. Haynes, 482 S.W.2d 444 (Mo. 1972).

1969). On retrial it will be necessary to determine whether there is evidence of injury to the left shoulder in the second accident before allowing a hypothetical question and answer relating to causation and apportionment of damage between the first and second accidents.

 Defendant Hudson contends that the trial court's only error was made in not sustaining his motion for a directed verdict in his favor. Hudson argues that there was no submissible case made against him; however, Hudson's argument assumes that bus driver White's testimony would be eliminated from consideration in the case, and that assumption is wrong. A defense motion for directed verdict challenges the sufficiency of the plaintiff's evidence to make a case. Rule 72.01; Buxton v. Horn, 452 S.W.2d 250 (Mo.App.1970). In determining whether plaintiff has made a submissible case, we view the evidence in the light most favorable to plaintiff and we consider admitted facts, treat plaintiff's evidence, including driver White's testimony, and its reasonable inferences as true and disregard defendant's evidence, except if it aids plaintiff's case. Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612 (Mo. 1970). Our ruling is that with the consideration of White's direct testimony there is sufficient evidence to make the question of defendant Hudson's liability a matter for jury determination.

Other matters asserted as points of alleged error are not likely to occur on retrial, and we need not pursue their solution. The judgment of the trial court is affirmed insofar as it grants a new trial to Bi-State, but it is reversed insofar as it limits the scope of the new trial as to Bi-State only and as to the issue of liability only. The cause is remanded for a new trial as to all parties and all issues.

SIMEONE, P. J., and McMILLIAN, J., concur.