Shirley J. NICCOLI,
Plaintiff/Respondent,

v.

Dannie M. THOMPSON, M.D.,[1] et al.,
Defendants/Appellants.

No. WD 36786.

Missouri Court of Appeals,
Western District.

July 15, 1986.

---

1. A settlement was reached as to defendant, Dannie M. Thompson, M.D., on the fourth day of trial, and the action was dismissed as to him with prejudice.

Willard Bunch, Elisabeth Sauer and Brian B. Myers (Campbell, Morgan & Gibson, J. Scott Bertram, Kansas City, of counsel), for plaintiff/respondent.

Edward H. Sheppard, Marilyn W. Pesto and James T. Seigfreid, Jr. (Baker & Sterchi, Kansas City, of counsel), for defendants/appellants.

Before PRITCHARD, P.J., SHANGLER, J., and BRUCE NORMILE, Special Judge.

BRUCE NORMILE, Special Judge.

This is a medical malpractice case.

One count of the petition alleged the performance of a wrongful vulvectomy upon plaintiff in March, 1982. On this count the jury found its Verdict A in favor of plaintiff/respondent, Shirley J. Niccoli, and against defendants/appellants, Robert E. Arnold, D.O., the surgeon, and The University of Health Sciences, his employer, and assessed plaintiff's damages at $5,000.00. However, on this count by its Verdict A, the jury found against plaintiff and in favor of defendant/appellant, Raymond Hall, D.O., a consulting oncologist, and the University, also his employer.

Another count of the petition alleged a wrongful oopherectomy by Dr. Arnold in March, 1983. On this count the jury found its Verdict B against plaintiff and in favor of defendants/appellants, Dr. Arnold and the University.

The trial court granted plaintiff's Motion for New Trial against all defendants and they appeal. Since both physicians were employees of the University, its liability will follow that of the physicians and the case will be discussed by primary reference to the physicians.

## VULVECTOMY CLAIM AGAINST DR. ARNOLD

In sustaining plaintiff's Motion for New Trial against Dr. Arnold and the University, the trial court found that the jury's award of $5,000.00 was:

"so grossly inadequate and against the weight of the evidence as to show bias, passion and prejudice on the part of the jury for the reason that the uncontroverted evidence at trial established that (a) Plaintiff was hospitalized for over five weeks and incurred over $19,500.00 of medical expenses as a result of her vulvectomy, (b) the vulvectomy involved the complete surgical removal of Plaintiff's vulva and clitoris, (c) the vulvectomy caused Plaintiff to suffer pain and mental anguish, (d) the vulvectomy resulted in scarring and disfigurement."

Defendants Arnold and the University first assert that the trial court's order was arbitrary and capricious because the "uncontroverted facts" enumerated by the trial court were in reality vigorously contested at trial. Their brief argues the evidence and its weight on each of the points. However, the trial court's reference to the "uncontroverted facts" was nothing more than its effort to explain to the parties and their attorneys why the court ruled that the verdicts were against the weight of the evidence. The trial court is not required to set forth its reasons for that conclusion or the process by which it made that determination. Even when a trial court gives "obscure, incorrect or erroneous reasons for its order granting a new trial on the ground that the verdict was against the weight of the evidence, the decision is conclusively presumed to have been made on that ground." *Burr v. Singh*, 362 Mo. 692, 243 S.W.2d 295, 300[10, 11] (1951); *Resco Construction Co. v. Dawson Cabinet Co.*, 656 S.W.2d 324, 327 (Mo.App.1983).

Appellants cite various cases relating to the trial court's discretion in granting new trials for inadequacy for damages. See, e.g., *Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487 (Mo.App.1965). However, in all the cited cases, the trial court did not find inadequacy of damages and motions for new trials were denied. That is not the case here and the review is somewhat different. *Hussey v. Kaiser*, 670 S.W.2d 208, 209–210 (Mo.App.1984). An appellate court is also more liberal in upholding the grant of a new trial than it is in reversing a

denial of a new trial. *Whiting v. United Farm Agency, Inc.*, 628 S.W.2d 407, 409[4] (Mo.App.1982); *Oventrop v. Bi-State Development Agency*, 521 S.W.2d 488[1–4] (Mo.App.1975).

Rule 78.02, of the Missouri Rules of Civil Procedure, provides that one new trial may be allowed "on the ground that the verdict is against the weight of the evidence". An order granting a new trial because of an inadequate verdict is tantamount to a ruling that the verdict is against the weight of the evidence. *Hussey v. Kaiser*, supra. The trial court is vested with an inherent and broad discretion in ordering a new trial on the ground of inadequacy of the verdict. *Boehmer v. Boggiano*, 412 S.W.2d 103, 110[7–10] (Mo.1967). If the trial judge believes that the jury's verdict is against the weight of the evidence, he has the duty to direct the entry of an order granting a new trial. *State v. Belvidere Development Co.*, 315 S.W.2d 781, 784[2–4] (Mo.1958). The general rule is that an appellate court will not interfere with the grant of a new trial on this ground, *Follman Properties Co. v. Henty Construction Co.*, 664 S.W.2d 248, 251[4–5] (Mo.App.1983), because the trial court has a unique opportunity to view and judge the actual presentation of evidence and evaluate the many trial intangibles not discernible from the lifeless record. *Kammerer v. Cella*, 585 S.W.2d 552, 554–555[1] (Mo.App.1979); *Stark v. St. Louis Public Service Co.*, 211 S.W.2d 500, 504[3] (Mo.App.1948). Thus, the trial court may consider the credibility of witnesses and may weight the evidence. *Homeyer v. Wyandotte Chemical Corp.*, 421 S.W.2d 306, 309[1–3] (Mo.1967); *Slusher v. United Electric Coal Companies*, 456 S.W.2d 339, 340[1–4] (Mo.1970); *Resco Construction Co. v. Dawson Cabinet Co.*, 656 S.W.2d 324, 326[2–5] (Mo.App.1983).

However, unlike the trial court, an appellate court may not pass on the weight of the evidence: *State ex rel. Highway Commission v. Eilers*, 406 S.W.2d 567, 575[16–19] (Mo.1966); *Mitchell v. Mosher*, 362 S.W.2d 532 (Mo.1962). The appellate court will not interfere with the trial court's dis-

cretionary action in such cases "unless the abuse of that discretion appears manifest". *Hufft v. Kuhn,* 277 S.W.2d 552, 554[3] (Mo. 1955).

The question on appellate review is not whether there was evidence to support the adequacy of the verdict, but whether there was evidence to support the judgment of the trial court that the verdict was inadequate. Slusher v. United Electric Coal Companies, supra. There is no abuse of discretion where there is substantial evidence to support the trial court's action in granting a new trial. *Underwood v. Brockmeyer,* 318 S.W.2d 192, 194 (Mo. 1958); *Hussey v. Kaiser,* supra; *Foster v. Rosetta,* 443 S.W.2d 183, 185[1–3] (Mo. 1969); *Millar v. Burg,* 316 S.W.2d 499 (Mo. 1958); *City of St. Charles v. De Sherlia,* 308 S.W.2d 456, 459[1] (Mo.App.1957).

In determining whether there was substantial evidence in this case to support the trial court's action in granting plaintiff a new trial on the basis of inadequacy of damages, every reasonable inference favorable to the trial court's ruling must be indulged. *Farley v. Johnny Londoff Chevrolet, Inc.,* 673 S.W.2d 800, 803[1] (Mo.App.1984); and only the evidence which would have supported a larger verdict may be considered. *Crabtree v. Reed,* 494 S.W.2d 42, 44[2] (Mo.1973). Some of the evidence favorable to the trial court's order is detailed hereafter.

■ Plaintiff was a 35 year old female who had left school in the eighth grade and essentially could not read or write. In March, 1982, she entered University of Health Sciences Hospital "to get her bladder fixed" because of urinary incontinence. She also had a sore on her clitoris which she thought was due to the loss of urine. The original diagnosis was "urinary infection, cystitis".

Because a pathological report indicated that plaintiff might have squamous cell carcinoma, she was referred to Dr. Arnold, a surgeon, for evaluation. A biopsy confirmed existence of a "squamous cell carcinoma in situ" which was described by one physician as a pre-cancerous condition which was not life threatening. Dr. Arnold thereafter obtained a consultation from Dr. Hall, an oncologist (cancer specialist). Dr. Hall recommended that plaintiff should have a "wide simple vulvectomy with excision of the clitoris". A simple (which in medical terms means "total") vulvectomy is the complete removal of a woman's vulva, including the labia majora and labia minora, all of that tissue that provides the sensation of the vulva or sexual response, and all vulvar structures, as well as the subjacent fat.

Dr. Arnold told plaintiff only that he intended to do some "corrective surgery" and "fix" her bladder. He did not advise her that he was going to perform a vulvectomy or that there were alternative, less radical and non-disfiguring methods of treatment. He did not advise her that she had carcinoma or cancer until after the vulvectomy was performed. There was substantial medical evidence that there were alternative methods of treatment and that a vulvectomy was not necessary or appropriate. There was substantial medical testimony that Dr. Arnold was negligent in performing such an operation under the facts and was negligent in failing to obtain an informed consent from the plaintiff.

After the operation, plaintiff woke up screaming. She described the pain as "outrageous", like "bacon sizzling in the skillet". She was in "severe agonizing hell" for six or seven days before the pain began to ease. She was hospitalized for 25 days after the surgery. There was other substantial evidence as to her pain, indignities and medication. At the time of her trial 2-½ years later in December, 1984, plaintiff still had "terrible" pain in her vaginal area that felt like she was "on fire". She would wake up in the middle of the night screaming. Dr. Arnold described the surgery as a "big disfiguring operation". Her medical bills relating to the hospitalization, surgery and related problems exceeded $19,000.00.

Prior to the operation plaintiff had an active sexual life. However, after the op-

eration she could no longer have sexual intercourse. She no longer had normal sexual response due to the removal of the clitoris and the nerves to the central areas of the vulva. She is now completely devoid of sexual feelings and capacity. Plaintiff testified that she was depressed and felt "totally worthless". She had not dated any men since the surgery, no longer felt attractive, and believed she would never marry again. After the surgery, plaintiff's weight had increased to 260 pounds which she attributed to a deep craving for food which she did not have before the surgery.

There was also extensive psychiatric testimony that plaintiff suffers from a major, incapacitating depression and an "anxiety disorder with agoraphobia". "Agoraphobia" is the fear of open places manifested by an extreme anxiety about leaving the privacy of one's house. Plaintiff is very frightened and very anxious about being around other people. She has great difficulty emotionally in going to a supermarket, a movie, a restaurant, or even to a doctor's office. Plaintiff is described as being "very much in a state of grief over the loss of body parts and the change in her physical being and the change in her capacity to function as a woman in the normal way in which a woman would function." Plaintiff will need long term psychotherapy and may need lengthy hospitalization for these conditions.

The above recital clearly demonstrates that there was substantial evidence to support the trial court's action. Thus, there was no abuse of discretion in finding the $5,000.00 verdict inadequate or in granting plaintiff a new trial.

■ Appellants Arnold and the University next assert that the grant of a new trial has deprived them of their "attained positions in this litigation", citing *Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487 (Mo.App.1965). However, that case only holds that the loss of an "attained position in the litigation" may make a party an "aggrieved" party so that he will have standing to maintain an appeal under § 512.020 RSMo. That language relates only to the right of a party to take an appeal and not to any right of the party to prevail on such an appeal. It is not applicable in this case.

■ Appellants Arnold and the University lastly assert error on this claim, by reason of the trial court's denial of their Motion for a Reduction of the Damages Awarded under RSMo § 537.060 (Cum. Supp.1983), which provides that a plaintiff's claim shall be reduced by the amount of a prior settlement with a joint tortfeasor. In this case plaintiff had earlier settled with other joint defendants for the sum of $40,000.00. Defendant's Motion for Reduction was rendered completely moot by the trial court's vacation of the jury verdict and the grant of a new trial on all issues. No error is presented in this respect.

Upon the foregoing basis, the order of the trial court granting plaintiff a new trial against Dr. Arnold and the University is affirmed.

### THE VULVECTOMY CLAIM AGAINST DR. HALL

Defendant, Raymond Hall, D.O., is the oncologist who examined the plaintiff at Dr. Arnold's request the day prior to the vulvectomy surgery. Dr. Hall did recommend that plaintiff should have a "wide simple vulvectomy with excision of the clitoris". Dr. Arnold relied on Dr. Hall's recommendation in making his decision to perform the vulvectomy.

The submission of negligence as to Dr. Hall was that he "failed to inform plaintiff of alternative methods of treatment for her carcinoma of the vulva or unnecessarily recommended that a vulvectomy be performed on plaintiff". As indicated, the jury returned a verdict in favor of defendants, Dr. Hall and the University, and against the plaintiff on these issues.

In this appeal of the grant of a new trial to plaintiff, Dr. Hall and the University first assert that plaintiff failed to make a submissible case. They urge that there was no evidence (1) that Dr. Hall had any

duty to plaintiff; (2) that he breached any duty by failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by a member of his profession; or (3) that he caused damage to plaintiff. The evidence upon these issues may be considered in the light most favorable to the plaintiff, according her all reasonable inferences and disregarding defendants' evidence except as it may add to the plaintiff's case. *Meridian Interests, Inc. v. J.A. Peterson Enterprises, Inc.*, 693 S.W.2d 179, 182[1, 2] (Mo.App. 1985).

■■■ The evidence that Dr. Hall examined the plaintiff for the purpose of treatment by Dr. Arnold, that he recommended the vulvectomy operation to Dr. Arnold, and that he made charges for his services to plaintiff, was sufficient to establish a physician-patient relationship. 61 Am. Jur.2d Physicians, Surgeons & Other Healers, § 158, p. 290. Thus, Dr. Hall did have the duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession. *Yoos v. Jewish Hospital*, 645 S.W.2d 177, 183[3, 4] (Mo.App.1982). However, the exact nature of Dr. Hall's duty to the plaintiff under the circumstances of this case, and the determination of whether he breached that duty, must be established by expert medical testimony. The ordinary layman is not equipped by common knowledge and experience to judge the skill and competence of the practice in issue or whether it squares with the standard of such professional practice. *Yoos v. Jewish Hospital*, supra.

■ On the issue of whether Dr. Hall negligently recommended that the vulvectomy be performed, there was expert medical testimony that a vulvectomy was inappropriate and that its performance was a deviation from the accepted standards of medical care, and negligent. The evidence that Dr. Arnold's performance of the operation was medical negligence was also evidence that Dr. Hall's recommendation for the performance of the operation was medical negligence. This constitutes substantial medical evidence that Dr. Hall did breach his duty to plaintiff by recommending an improper, unnecessary, and harmful procedure. There was also evidence of causation since Dr. Arnold relied on Dr. Hall's recommendation, and plaintiff was damaged by the operation. The case was properly submitted to the jury as to Dr. Hall's negligence in unnecessarily recommending a vulvectomy.

■ The issue of whether Dr. Hall negligently failed to inform plaintiff of alternative methods of treatment presents a different situation. Discussion of alternative methods of treatment is part of the process whereby a physician obtains an informed consent from a patient for further treatment. Dr. Hall, as an oncologist, was merely a consultant to Dr. Arnold, the surgeon. It was not intended that Dr. Hall would himself provide any further treatment for plaintiff beyond his consultation and report to Dr. Arnold. That report was to assist Dr. Arnold in *his* further treatment of the plaintiff.

There was substantial medical testimony that the failure of Dr. Arnold, as the surgeon and "treating physician", to discuss alternative methods of treatment, was a deviation from accepted medical standards of care, and negligent. However, there was not any expert medical evidence that Dr. Hall had a duty as a "consulting physician" to discuss alternative methods of treatment with plaintiff under the circumstances of this case. The ordinary layman on the jury would not be equipped by common knowledge and experience to judge whether a "consulting physician" was required by standards of medical practice under the circumstances here to inform a patient of the consultant's diagnosis, his recommendation, and alternative forms of treatment, etc. And, on the other hand, the ordinary layman would not know whether medical standards might only require a "consulting physician" to provide such information to the "treating physician" who would then be required to properly inform the patient and obtain an informed consent. Without expert medical

evidence as to Dr. Hall's duty under the circumstances of this case, the jury would have to resort to conjecture and surmise or set up an arbitrary standard of their own in determining whether Dr. Hall failed to exercise appropriate medical skill and care. *Aiken v. Clary*, 396 S.W.2d 668, 674 (Mo. 1965). In the absence of such expert medical testimony, Dr. Hall's failure to inform the plaintiff of alternative methods of treatment was improperly submitted to the jury. Such a submission may only be made on retrial if supported by expert medical evidence.

Appellants Hall and the University next assert that the trial court's order vacating the verdict in their favor was founded on mere speculation since it was solely predicated on the court's order granting plaintiff a new trial as to Dr. Arnold (because of the inadequacy of the verdict). The claims against both Dr. Arnold and Dr. Hall arose out of plaintiff's single claim for damages from the wrongful vulvectomy. The liability of both physicians on this claim was submitted by Verdict A. The jury's verdict was for plaintiff and against Dr. Arnold, and against plaintiff and for Dr. Hall.

▌ In its order granting the plaintiff a new trial against Dr. Hall, the trial court found that "the jury's bias, passion and prejudice, demonstrated by its shockingly inadequate verdict of $5,000.00 in Verdict A may have affected or resulted in the jury's finding in Verdict A in favor of defendants, Raymond Hall and University of Health Sciences and against plaintiff."

Rule 78.01 provides that the trial court may grant a new trial of any issue "upon good cause shown". Good cause would be shown if the jury's verdict for Dr. Hall and the University was the result of the jury's bias, passion and prejudice. The trial court's concern about this certainly involved matters affecting the determination of fact issues. The grant of a new trial based on determination of questions of fact or matters affecting the determination of fact issues will be reversed only for abuse of broad discretion. *Hornsby v. West*, 665 S.W.2d 372, 373[1, 2] (Mo.App.1984); *Tuffli*

*v. Board of Education*, 643 S.W.2d 296, 297 [1, 2] (Mo.App.1982); and *Oventrop v. Bi-State Development Agency*, supra. Where the trial judge has found that the jury was "activated by bias and prejudice on one issue, a fortiori, prejudice has extended to all other issues". *Oventrop*, supra. Thus, the trial court's determination was within its broad discretion. The exercise of that discretion was no more speculative here than it would have been in cases involving possible jury bias and prejudice from the mention of "insurance" at trial, *Hornsby v. West*, supra, or possible bias and prejudice from an apparent improper contact with a juror, *Sunset Acres Motel, Inc. v. Jacobs*, 336 S.W.2d 473, 479 (Mo. 1960). No abuse of discretion is shown in this respect.

Dr. Hall and the University finally assert, as did Dr. Arnold, that the grant of a new trial has deprived them of their "attained positions in litigation". As indicated in the discussion of Dr. Arnold's appeal, there is no merit in this claim.

Finding no abuse of discretion, the trial court's order granting a new trial against Dr. Hall and the University will be affirmed.

## THE OOPHERECTOMY CLAIM AGAINST DR. ARNOLD

Plaintiff's second count against Dr. Robert Arnold and the University was based on an alleged negligent and unnecessary removal of plaintiff's ovaries by an operation in March, 1983.

After the vulvectomy in March 1982, plaintiff could no longer use tampons or sanitary napkins without pain and irritation. Because of these problems she returned to defendant University in March, 1983. Dr. Arnold recommended a hysterectomy to eliminate plaintiff's menstrual periods and eliminate these problems. On March 12, 1983, defendant performed a total hysterectomy [the removal of the uterus] and bi-lateral salpingo oopherectomy [removal of the ovaries]. Plaintiff did not make any claim concerning the hysterecto-

my but only asserted negligence and injury from the oopherectomy.

On this claim, the jury returned its Verdict B finding against the plaintiff and for the defendants. Thereafter, the trial court granted plaintiff's motion for new trial for the reason that the "jury's bias, passion and prejudice demonstrated by its shockingly inadequate verdict of $5,000.00 in Verdict A may have affected or resulted in the jury's finding in Verdict B."

■ On this appeal, Dr. Arnold and the University first assert that the trial court's order is founded on mere speculation in that it is solely predicated on the court's order in Verdict A finding inadequacy of damages on the vulvectomy claim. This assertion is similar to Dr. Hall's assertion as to Verdict A. It is similarly without merit. If the jury's bias, passion and prejudice in favor of Dr. Arnold was demonstrated by its Verdict A on the vulvectomy claim, it can certainly be inferred that its Verdict B between the same parties was affected by that same bias, passion and prejudice. The determination as to whether that bias and prejudice affected the determination of the fact issues concerning the oopherectomy was well within the broad discretion of the trial court. No abuse of that discretion is found.

■ Appellants Arnold and the University next assert that the trial court abused its discretion in granting a new trial because plaintiff failed to make a submissible case against Dr. Arnold as to causation. They assert that there was no evidence of injuries caused by the oopherectomy. In this respect there was expert medical testimony that the removal of plaintiff's ovaries was unjustified and constituted a deviation from the accepted standard of care. The evidence of the negligent and unnecessary removal of plaintiff's healthy asymptomatic ovaries was in itself evidence of injury to her by reason of the negligent operation. There was other evidence as to the adverse physical effects suffered by plaintiff by reason of the loss of these important body organs. The case was clearly submissible against Dr. Arnold as to the causation of plaintiff's injury by the oopherectomy.

Appellants Arnold and the University lastly assert that they have been deprived of their "attained positions in this litigation" by the grant of a new trial. As indicated, this is without merit.

There was thus no error in the grant of a new trial to plaintiff against defendants, Arnold and the University, on the count for a wrongful oopherectomy.

Upon the foregoing basis, the action of the trial court in granting plaintiff a new trial on all issues against all defendants is affirmed.

All concur.