Helen and Raymond HAWKINS, Plaintiffs–Respondents,

v.

Glenn COCKROFT, Defendant,

and

HWH Corporation, Defendant–Appellant.

No. 17914.

Missouri Court of Appeals, Southern District, Division Two.

March 5, 1993.

Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell and Cunningham, Springfield, for defendant-appellant.

Phillip R. Garrison, Farrington and Curtis, Springfield, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiffs Helen Hawkins and Raymond Hawkins brought this action against defendants Glenn Cockroft and HWH Corporation, seeking damages allegedly resulting from an incident which occurred on January 2, 1987, involving a Chevrolet driven by Helen Hawkins and a farm tractor driven by defendant Cockroft on Missouri Highway 14 in Christian County. The petition alleged that hydraulic fluid escaped from the tractor onto the highway, and that the fluid caused the Chevrolet to leave the roadway and collide with a fence and telephone pole, resulting in injuries to Helen Hawkins. The petition alleged that HWH Corporation was the manufacturer and seller of a logsplitter attached to the tractor and was responsible for the escape of the hydraulic fluid. Raymond Hawkins sought damages on his derivative claim as Helen's spouse.

The claims of both plaintiffs against both defendants were submitted to a jury. The verdict denied both plaintiffs recovery against defendant Cockroft, awarded Helen Hawkins $28,500 against defendant HWH Corporation, found that plaintiff Raymond Hawkins did not sustain damage as a direct result of injury to his wife and awarded him no damages, and assessed the proportions of fault as zero percent for Cockroft and 100 percent for HWH Corporation.

Both plaintiffs filed a motion for new trial which sought an order granting a new trial against defendant HWH Corporation as to the issue of damages only. The trial court sustained the motion and, in accordance with Rule 78.03,[1] specified the ground on which the new trial was granted. The ground was that during voir dire examination venirepersons Ellison and Jimerson, both of whom served on the jury, intentionally failed to disclose information requested during voir dire. Cockroft is no

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

longer in the case. HWH Corporation appeals.[2]

On this appeal, HWH Corporation contends, in general, that the court erred in finding that the nondisclosures of jurors Ellison and Jimerson were intentional and prejudicial and, further, even if a new trial was justified, it was improper to limit the new trial to the issue of damages only.

At the outset of voir dire, the prospective jurors were told to respond by raising their hands "if a question might apply to you."

During voir dire, the following questions were among those addressed by plaintiffs' counsel to the prospective jurors: "Has anybody been party to a lawsuit before?"; "Anybody ever had a claim or lawsuit filed against you?"; "Have any of you had claims made against you by somebody else, whether or not it finally resulted in a lawsuit, whether or not a lawsuit was actually filed, somebody filed a claim against you?" Neither Ellison nor Jimerson made any response to any of the foregoing questions.

A hearing was held on the motion for new trial, and Ellison and Jimerson testified. Ellison testified that she remembered the quoted questions being asked on voir dire and that she did not respond to any of those questions. She testified that at the time the questions were asked she and her husband were defendants in a lawsuit pending in the Circuit Court of Christian County in which a bank, as plaintiff, sought damages totaling approximately $93,000. She understood the questions which were asked on voir dire. Her education included more than two years in college. Under questioning by plaintiffs' counsel, Ellison gave the following testimony:

Q. And, when I was asking those questions on voir dire examination did the thought of that lawsuit that was pending against you and your husband go through your mind?

A. Well, okay, when—lawsuit pending, yes, I guess. When you asked the questions I did not think there had been a lawsuit actually filed, but, yes, I did question in my mind whether it was something that pertained to me.

Q. Okay, and let's say, as I understand you, when the questions were asked you didn't understand that a lawsuit had actually been filed against you and your husband. Is that right?

A. That's right.

Q. But, you did know, when those questions were asked, that the bank, who is the plaintiff in that law-suit, was making claims against you and your husband?

A. Yes.

Q. And, if a lawsuit had not been filed, it was going to be?

A. Right.

Q. And, you knew that when the question was asked, and did it go through your mind that perhaps that might be—that kind of information might be what I was asking when I asked the question "Has anybody had a claim made against you"?

A. Yeah, I wondered whether that was something I should respond to.

Q. Okay, and is there some reason why you didn't respond to that question?

A. Well, like I said, I wasn't sure that it actually applied to me, and I actually—you know, I didn't think that it probably made any difference in my judgment, but you know, I thought about it, and I decided that it wasn't something that really applied.

Q. And, you're talking now about during the process of that voir dire examination you thought about the fact that this claim that was being made against you and your husband and the questions that I was asking about lawsuits and claims, and you just decided that it probably didn't apply, so you didn't say anything about it?

A. Right.

2. "[A] party may appeal from an order granting a new trial on the issue of damages only." *Fulton v. Bailey,* 413 S.W.2d 514, 515[1] (Mo.1967). See § 512.020; *Page v. Hamilton,* 329 S.W.2d 758, 762[3] (Mo.1959); *Stith v. St. Louis Public Service Co.,* 363 Mo. 442, 251 S.W.2d 693, 695[5] (1952).

Jimerson testified that he remembered the quoted questions being asked during voir dire and that he did not raise his hand or respond to those questions. He testified that he had been a defendant in a lawsuit filed in the Circuit Court of Christian County in which a bank was plaintiff. The lawsuit was filed in 1990 and was dismissed prior to the voir dire examination in the case at bar. The lawsuit involved a demand for recovery of possession of a mobile home in which the bank held a security interest in connection with a loan made to Jimerson. Under questioning by plaintiffs' counsel, Jimerson gave the following testimony:

Q. When I asked the questions about whether you had been—had any claims been made against you, or whether you had had any lawsuits filed against you, did you think of this situation?

A. Yes. '

Q. You understood my questions—

A. —Yes.—

Q. —when I was asking those?

A. Yes.

Q. And, you thought of the fact that you had been a defendant in a lawsuit that had been filed here in Christian County while I was asking those questions?

A. Yes.

Q. And, you did not respond and did not reveal that information during the voir dire examination, is that true?

A. No, I didn't.

Q. Did you realize at the time and in your own mind that my questions probably called for you to reveal the information about this lawsuit?

A. Yes.

. . .

Q. Mr. Jimerson, did you during that voir dire examination fail to reveal the information about this lawsuit, marked Plaintiffs' Exhibit E, knowing that my voir dire questions called for you to tell about that information?

A. Yes.

On cross-examination by counsel for HWH Corporation, Jimerson gave the following testimony:

Q. You understood the questions?

A. Yes.

Q. You recalled that you'd been a party to a lawsuit?

A. Yes.

Q. Why didn't you say "Yeah, that applies to me"?

A. I guess I thought about it, and I knew that it wouldn't make a difference in my opinion, you know in my decision, and I guess at the time I didn't realize that a repossession claim was actually being sued, you know.

The trial court, in the order granting a new trial, found "that the failure of jurors Ellison and Jimerson to disclose the information requested was intentional." The court also found that plaintiffs were prejudiced as a result of the nondisclosure and were entitled to a new trial.

■ HWH Corporation's first point is that the trial court erred in granting a new trial on the basis of the nondisclosures of Ellison and Jimerson because the matters not disclosed were not "fairly asked for," the nondisclosures were not intentional, and the prejudice, if any, was slight or nonexistent because the basis of each lawsuit not disclosed was unrelated to plaintiffs' claims.

■ Each of the parties had a constitutional right to a fair and impartial jury composed of 12 qualified jurors. Mo. Const. art. I, Sec. 22(a); *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33 (Mo. banc 1987). On voir dire examination, each prospective juror has the duty to answer fully, fairly and truthfully all questions directed to him, and to the panel generally, so that his qualifications may be determined and challenges may be intelligently exercised. *Williams, supra,* at 36. Nondisclosure of information requested of a prospective juror on voir dire may be intentional or unintentional.

Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops

that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.

Unintentional nondisclosure exists where, for example, the experience forgotten was insignificant or remote in time, or where the venireman reasonably misunderstands the question posed.

The determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court. Its ruling is disturbed on appeal only upon a showing of abuse of that discretion.

. . . . .

In some contexts, the opportunity for error is so great that a party's right to a fair and impartial jury must be presumed compromised. If a juror intentionally withholds material information requested on voir dire, bias and prejudice are inferred from such concealment. For this reason, a finding of intentional concealment has "become tantamount to a per se rule mandating a new trial."

*Williams, supra,* at 36–37. (Citing authorities).

■ When an inquiry is made on voir dire concerning a claim, the word " 'claim' even in the barest of layman's language, includes not only a lawsuit but also a claim settled out of court." *Williams, supra,* at 38.

"The appellate courts are more liberal in upholding a trial court's action in sustaining a motion for new trial than in denying it." *Girratono v. Kansas City Public Service Co.,* 272 S.W.2d 278, 281 (Mo.1954). To similar effect see *Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co.,* 446 S.W.2d 623, 626 (Mo.1969); *Lee v. Baltimore Hotel Co.,* 345 Mo. 458, 136 S.W.2d 695, 698–699 (1939).

In *Rinkenbaugh,* the trial court granted a new trial on the ground that a juror intentionally failed to disclose, on voir dire examination, that he had been "sued on account of personal injuries suffered by another person." In affirming the order, the supreme court said, at 626:

No case is cited, or has been found, which reverses a trial court's ruling granting a new trial for the same reason as here. Such lack of cases is not for the reason suggested by defendant, that "the trial judge should not be reversed for abusing his discretion because it has never been done before." Rather, the usual affirmance of the trial court's action is based upon the long-standing rule that an order granting a new trial will be more liberally upheld, and for the further rule of deference to the trial court because, having presided over the trial and the hearing on the motion for new trial, it is in a better position to determine the prejudicial effect of nondisclosure of information by a prospective juror.

In *Lee, supra,* the court said, at 698:

[A] party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men. A man who uses dishonest means to get on a jury, does not usually do so for the purpose of honestly deciding the case on the law and the evidence.

■ A prospective juror is not the judge of his own qualifications. *Girratono, supra,* at 281. To similar effect see *Rinkenbaugh, supra,* at 626; *Beggs v. Universal C.I.T. Credit Corp.,* 387 S.W.2d 499, 503 (Mo. banc 1965).

In *Beggs,* the court said, at 503:

It makes no difference whether the unanswered or untruthfully answered question was one asked to the panel generally or to the particular juror individually. So long as he hears the question and understands that it calls for an answer by him as a member of the panel, even though it may be directed to the panel generally he is not relieved of his duty to answer.

. The questions to which neither Ellison nor Jimerson responded on voir dire were plainly stated. Ellison understood the questions and admitted that she questioned in her own mind whether they "pertained

to me." She said that she did not think "that it probably made any difference in my judgment."

Jimerson conceded that he understood the questions and that he did not respond to them. He admitted that he realized that the questions "probably called for [him] to reveal the information" about the lawsuit which was pending against him. He said that he "thought about it" and "I knew that it wouldn't make any difference in my opinion, you know, in my decision."

■ The record refutes the contention of HWH Corporation that the matters not disclosed were not "fairly asked for." The record supports the finding of the trial court that the nondisclosures were intentional. A finding of intentional concealment is "tantamount to a per se rule mandating a new trial." *Williams, supra,* at 36–37.

In *Rinkenbaugh, supra,* the supreme court pointed out that no case has been cited or found in which an appellate court reversed a trial court's grant of a new trial on the ground of intentional nondisclosure. HWH Corporation has cited no such case. This court holds that the trial court did not err in finding that the nondisclosures of jurors Ellison and Jimerson were intentional and prejudicial and in ordering a new trial. The first point of HWH Corporation has no merit.

■ HWH Corporation's second point is that the trial court erred in granting the plaintiffs a new trial on the issue of damages only rather than a new trial on all issues because "the taint of the jury due to bias extends to all issues and not merely to the issue of damages."

Rule 78.01 reads, in pertinent part: "The [trial] court may grant a new trial of any issue upon good cause shown. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury...." Rule 84.14 reads, in pertinent part: "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give.... No new trial shall be ordered as to issues in which no error appears."

In *Artstein v. Pallo,* 388 S.W.2d 877 (Mo. banc 1965), plaintiff was a passenger in an automobile operated by defendant. The vehicle collided with a tree, causing personal injuries to plaintiff. The jury returned a verdict in plaintiff's favor for $500. Plaintiff filed a motion for new trial on the issue of damages only. The trial court sustained the motion. Defendant appealed and contended that the trial court erred in limiting the new trial to the issue of damages only. The supreme court sustained that contention.

The supreme court pointed out that the order of the trial court failed to specify the grounds on which the new trial was granted and that a possible basis for the trial court's ruling was misconduct of the jury. The court said, at 881–882:

> If the jury was actuated by passion, prejudice or other misconduct, the new trial should not be restricted to damages alone. As stated in *Taylor v. St. Louis Public Service Co.,* Mo., 303 S.W.2d 608, 612: "We have the view, therefore, that it may not be soundly argued that inasmuch as the jury found defendant liable for plaintiff's injury there was no passion, prejudice or misconduct involved in arriving at the 'liability portion' of the verdict. The fallacy in such an argument is that merely because plaintiff was not prejudiced by the liability portion of the verdict does not mean that it was not pervaded by the same misconduct and actuated by the same passion and prejudice as was the 'damages portion' of the verdict."

> Our practice of permitting a new trial on less than all the issues is a salutary one if judiciously applied in situations where it is clear from the record that one or more of the issues have been properly considered and determined, and that a new trial limited to the remaining issues will not result in prejudice or injustice to a party.

> There is a distinction between an award of grossly inadequate damages and an award of substantial but still

inadequate damages. An award of grossly inadequate damages has been held to be convincing evidence that the jury was actuated by bias, prejudice or other misconduct.

... On the record before us, the verdict does not bespeak a proper determination of liability and also an award of adequate damages. We cannot say with certainty that the jurors did not slight the determination of one or both of these necessary elements and, in effect, return a compromise verdict. We would be naive indeed to assert with confidence that the jurors properly considered and determined the issue of liability solely because, under the law as given them in the instructions, they were not warranted in awarding even nominal damages unless they found the defendant to be liable. We must conclude that there was misconduct on the part of the jury which justifies a new trial and that the new trial should be on all issues.

*Where passion, prejudice or misconduct on the part of the jury affects the trial of one issue, the judgment and verdict must be set aside entirely and a new trial granted on all issues even though the plaintiff moves for a new trial on the issue of damages only.*

(Authorities omitted, emphasis added).

The supreme court affirmed the portion of the trial court's order which granted a new trial but reversed the portion of the order limiting the new trial to damages only, and remanded the cause for a new trial on all the issues.

There are other cases where the trial court ordered a new trial on the issue of damages only, based on misconduct of the jury, and the appellate court found error in so limiting the new trial and granted a new trial on all the issues. They include: *Pinkston v. McClanahan*, 350 S.W.2d 724 (Mo. 1961); *Boschert v. Eye*, 349 S.W.2d 64 (Mo. 1961); *Taylor v. St. Louis Public Service Co.*, 303 S.W.2d 608 (Mo.1957); *Riley, et al., v. L.J. Schuster Co.*, 844 S.W.2d 521 (Mo.App.E.D., 1992); *Oventrop v. Bi–State Development Agency*, 521 S.W.2d 488 (Mo. App.1975).

In *Caen v. Feld*, 371 S.W.2d 209, 213 (Mo.1963), the court said:

The evidence on the issue of liability was close, or at least it was not free from doubt, and plaintiff has asserted on this appeal that the verdict was "the result of passion, prejudice and misconduct." If such error has tainted part of a verdict, as plaintiff contends it has, then regardless of in whose favor tainting occurred, the whole verdict should be set aside and not just part of it.

In other cases, and in varying factual situations, the appellate court has affirmed an order granting a new trial but limiting the new trial to the issue of damages only. *Nance v. Kimbrow*, 476 S.W.2d 560 (Mo. 1972); *Friedman v. Brandes*, 439 S.W.2d 490 (Mo.1969); *Sapp v. Key*, 287 S.W.2d 775 (Mo.1956); *Burke v. Coca–Cola Bottling Company of St. Louis*, 457 S.W.2d 218 (Mo.App.1970).

In *Friedman*, the court said, at 493:

This is not a case where the asserted ground for new trial is that the verdict was the result of passion, prejudice or misconduct on the part of the jury so as to make applicable the requirement for new trial on all issues under *Artstein v. Pallo*, Mo., 388 S.W.2d 877, 882[9] [(1965)], and *Boschert v. Eye*, 349 S.W.2d 64, 67[6, 7] [(1961)], and like cases. Rather, this is merely that the verdict is inadequate, i.e., against the weight of the evidence, and in such circumstance the trial court has full authority to grant a new trial on the limited issue of damages.

In *Burke*, the appellate court rejected the defendant's contention that the verdict was so grossly inadequate as to show misconduct of the jury. The court said, at 220: "We hold rather that this case falls under the doctrine that where substantial but still inadequate damages are awarded, a trial court may properly grant a new trial on the issue of damages alone."

In *Sapp*, the verdict was for plaintiff in the amount of $1,000, and the supreme court held that the trial court properly treated the award as grossly inadequate and against the weight of the evidence.

Errors sought to be raised by the defendant concerning the issue of liability had not been preserved, and none of them constituted plain errors. *Sapp* antedated *Artstein.*

In *Nance,* the court distinguished *Artstein* by saying that in *Artstein* there was a definite question as to defendant's liability, and in *Nance* the record showed "clear and conceded liability" of the defendant. Apparently, in *Nance,* liability was conceded in the sense that defendant did not file a motion for new trial. *Nance,* like *Artstein,* involved a suit by a passenger against the driver for injuries arising out of a one-car accident.

It is arguable that the holding in *Nance* is inconsistent with the holding in *Artstein.* If so, *Artstein* controls as it is a decision of the court en banc. See *Smith v. St. Louis Public Service Co.,* 364 Mo. 104, 259 S.W.2d 692, 694[1] (banc 1953). Neither case involved misconduct of the type present here, that is, intentional nondisclosure by a prospective juror. The same is true of *Sapp.*

In view of the language from *Artstein,* quoted and emphasized above, this court holds that the trial court erred in limiting the new trial to the issue of damages only. Defendant HWH Corporation's second point has merit.

The portion of the order granting a new trial against defendant HWH Corporation is affirmed, the portion of the order limiting the new trial to damages only is reversed, and the cause is remanded for a new trial against defendant HWH Corporation on all issues.

MONTGOMERY, P.J., and PREWITT, J., concur.

GARRISON, J., took no part in the consideration of this case.